# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CHAAN WILLIAM BEARD, NANCY STIREK, MATT AND TAMMY MOELLER, LINDA BABINSKI, JOHN GATTI, and KARIN AND LEO MCCLOSKEY, individually and on behalf of all others similarly situated, | No. |
| | Honorable |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| VOLKSWAGEN GROUP OF AMERICA, INC., VOLKSWAGEN AG, AUDI AG, AUDI OF AMERICA LLC, AUDI OF AMERICA, INC., VW CREDIT, INC., PORSCHE AG and PORSCHE CARS NORTH AMERICA, INC., | |
| Defendants. | |

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................1

II.   NATURE OF THE ACTION ..............................................1

III.  PARTIES ..........................................................................9

IV.   JURISDICTION AND VENUE ......................................12

V.    FACTS ............................................................................19

    A.   Defendants Tout Their Diesel Vehicles as Being Fuel
       Efficient and Good for the Environment............................19

    B.   Volkswagen Intentionally Hid the Excessive and Illegal
       Levels of Pollution Emitted from Its Cars ........................29

    C.   Defendants Have Profited Handsomely From Their
       Diesel Vehicles....................................................................36

    D.   Volkswagen's Illegal Actions Have Caused Class
       Members Significant Harm .................................................37

    E.   The Federal Authorities' Investigation of Volkswagen
       Centers on Its Activities in Michigan................................41

    F.   VW Credit, Inc. Financed the Purchases of Defeat
       Device Vehicles...................................................................44

VI.   PLAINTIFFS' FACTS ....................................................45

    A.   Plaintiff Chaan William Beard...........................................45

    B.   Plaintiff Nancy Stirek.........................................................46

    C.   Plaintiffs Matt and Tammy Moeller...................................47

    D.   Plaintiff Linda Babinski .....................................................48

    E.   Plaintiff John Gatti ............................................................50

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

F.      Plaintiffs Karin and Leo McCloskey.................................................51

VII.    CLASS ACTION ALLEGATIONS ...........................................................52

1.      Numerosity: Federal Rule of Civil Procedure
        23(a)(1).......................................................................53

2.      Commonality and Predominance: Federal Rule of
        Civil Procedure 23(a)(2) and 23(b)(3) ....................................54

3.      Typicality: Federal Rule of Civil Procedure
        23(a)(3).......................................................................55

4.      Adequacy: Federal Rule of Civil Procedure
        23(a)(4).......................................................................55

5.      Declaratory and Injunctive Relief: Federal Rule of
        Civil Procedure 23(b)(2) ...................................................56

6.      Superiority: Federal Rule of Civil Procedure
        23(b)(3) ......................................................................56

VIII.   ANY APPLICABLE STATUTES OF LIMITATION ARE
        TOLLED .........................................................................57

A.      Discovery Rule Tolling ........................................................57

B.      Tolling Due To Fraudulent Concealment .......................................58

C.      Estoppel .......................................................................59

IX.     CAUSES OF ACTION............................................................60

A.      Claims Asserted on Behalf of the Class..........................................60

        COUNT I: FRAUD BY CONCEALMENT (Common
        Law) .........................................................................60

        COUNT II: BREACH OF CONTRACT ..........................................67

        COUNT III: BREACH OF EXPRESS WARRANTY ...................68

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

COUNT IV: BREACH OF IMPLIED WARRANTY ......................70

COUNT V: IMPLIED AND WRITTEN WARRANTY
Magnuson - Moss Warranty Act (15 U.S.C. §§
2301, *et seq.*) ..........................................................................72

COUNT VI: UNJUST ENRICHMENT............................................74

COUNT VII: VIOLATION OF RACKETEER
INFLUENCED AND CORRUPT
ORGANIZATIONS ACT ("RICO") (18 U.S.C. §§
1961, *et seq.*) ..........................................................................74

B.     State-Specific Claims .....................................................103

COUNT VIII: VIOLATION OF MICHIGAN
CONSUMER PROTECTION ACT (Mich. Comp.
Laws §§ 445.901, *et seq.*) .....................................................103

COUNT IX: VIOLATION OF THE CALIFORNIA
CONSUMERS LEGAL REMEDIES ACT (Cal.
Civ. Code §§ 1750, *et seq.*)...................................................104

COUNT X: VIOLATION OF CALIFORNIA FALSE
ADVERTISING LAW (Cal. Bus. & Prof. Code §§
17500, *et seq.*) .....................................................................107

COUNT XI: BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (Cal. Com. Code § 2314) .............109

COUNT XII: FRAUD BY CONCEALMENT (California
Law) ........................................................................................111

COUNT XIII: VIOLATION OF SONG-BEVERLY
CONSUMER WARRANTY ACT FOR BREACH
OF IMPLIED WARRANTY OF
MERCHANTABILITY (Cal. Civ. Code §§ 1791.1
& 1792) ...................................................................................117

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

COUNT XIV: VIOLATION OF NEBRASKA
CONSUMER PROTECTION ACT (Neb. Rev.
Stat. §§ 59-1601, *et seq.*) ......................................................120

COUNT XV: VIOLATION OF TEXAS DECEPTIVE
TRADE PRACTICES ACT (Tex. Bus. & Com.
Code §§ 17.41, *et seq.*)............................................................123

COUNT XVI: VIOLATION OF THE FLORIDA
DECEPTIVE & UNFAIR TRADE PRACTICES
ACT (Fla. Stat. §§ 501.201, *et seq.*) ......................................124

COUNT XVII: VIOLATION OF THE WASHINGTON
CONSUMER PROTECTION ACT (RCW §§
719.86, *et seq.*) ......................................................................126

X.   REQUEST FOR RELIEF .........................................................129

XI.   DEMAND FOR JURY TRIAL ................................................130

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

# I.      INTRODUCTION

Plaintiffs Chaan William Beard, Nancy Stirek, Matt and Tammy Moeller, Linda Babinski, John Gatti, and Karin and Leo McCloskey ("Plaintiffs"), individually and on behalf of all others similarly situated, allege the following against Volkswagen Group of America, Inc., Volkswagen AG, Audi AG, Audi of America LLC, Audi of America, Inc., VW Credit, Inc., Porsche AG, and Porsche Cars North America, Inc., ("Defendants" or "Volkswagen"), based where applicable on personal knowledge, information and belief, and the investigation of counsel. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

# II.     NATURE OF THE ACTION

1.      This action is not about corporate negligence; rather, it is about a global auto manufacturer's intentional deception of well-meaning, conscientious consumers and regulators, and its large-scale, misguided plan to profit by gaming the system rather than playing by the rules.

2.      This nationwide class action concerns the installation of so-called "defeat devices" on over 500,000 diesel Volkswagen, Audi, and Porsche vehicles sold in the United States since 2009 ("Defeat Device Vehicles"). Defendants marketed those vehicles as environmentally-friendly cars that possessed the holy grail of automotive qualities: extremely high fuel efficiency and performance with

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

very low emissions. Although Defendants successfully marketed these expensive cars as "green," their environmentally-friendly representations were a sham. Defendants did not actually make cars with those desirable and advertised attributes.

3.      According to a Notice of Violation ("NOV") issued by the U.S. Environmental Protection Agency (EPA) on September 18, 2015, Volkswagen installed its "defeat device" in at least the following diesel models of its vehicles: Model Year ("MY") 2009-2015 Jetta; MY 2009-2014 Jetta Sportwagen; MY 2012-2015 Beetle and Beetle Convertible; MY 2010-2015 Golf; MY 2015 Golf Sportwagen; MY 2012-2015 Passat; and MY 2010-2015 Audi A3. These vehicles are all equipped with 2.0 liter diesel engines. A second NOV, on November 2, 2015, added the following vehicles equipped with a second, 3.0 liter diesel engine: Model Year ("MY") 2014 Volkswagen Touareg, 2015 Porsche Cayenne, and the 2016 Audi A6 Quattro, A7 Quattro, A8, A8L, and Q5. Together, these are the "Defeat Device Vehicles." The California Air Resources Board ("CARB") is currently investigating whether Defendants installed the device in other cars as well, so additional vehicle models and model years may be added to this list when new facts are discovered.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

4.      Defendants' violations were first explained in a Notice of Violation the EPA issued to Defendants, as well as a letter from CARB, copies of which are attached to this Class Action Complaint as Exhibits A and B, respectively.

5.      According to the second NOV, after the EPA issued the September notice, it then began investigating other Volkswagen Group diesel models. On November 2, 2015, the EPA announced a new NOV for models equipped with the 3.0 liter TDI "Clean Diesel" engine. These new vehicles apparently represent an extension of the same deceptive scheme as with the 2.0 liter vehicles: to market diesel vehicles as offering extremely high fuel mileage coupled with low emissions.

6.      Instead of delivering on their promises of extremely high fuel mileage coupled with low emissions, Defendants devised a way to make it appear that their cars did what they said they would when, in fact, they did not. Put simply, Defendants lied and continued to lie over a period of years.

7.      As Michael Horn, President and CEO of Volkswagen Group of America, reportedly admitted before unveiling the 2016 Volkswagen Passat in New York on September 21, 2015:

> As you have seen since Friday, the EPA, the Environmental Protection Agency, has issued a statement and reality that Volkswagen Group manipulated engine software in our TDI diesel cars, and we violated emissions standards. The CEO of our parent company, Dr. Martin Winterkorn, said yesterday Volkswagen will fully cooperate with the responsible agencies, and much, much more important as I see it, he

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

stated that he was personally and deeply sorry for this—that Volkswagen has broken the trust of our customers, and the public here in America. And lastly he stated that this matter, and this is I think common sense, now this is the first priority for him personally and for the entire Board of Management. So let's be clear about this: our company was dishonest with the EPA and the California Air Resources Board, and with all of you. And in my German words, we've totally screwed up. We must fix those cars, and prevent this from ever happening again, and we have to make things right—with the government, the public, our customers, our employees, and also very importantly our dealers. This kind of behavior, I can tell you out of my heart, is completely inconsistent with our core values. The three core values of our brand are value, innovation, and in this context very importantly, responsibility: for our employees, for our stakeholders, and for the environment. So it goes totally against what we believe is right. Along with our German headquarters, we are committed to do what must be done, and to begin to restore your trust.

8.      Volkswagen "screwed up" by intentionally designing and installing defeat devices that work by switching on the full emissions control systems in Defendants' cars only when the car is undergoing periodic emissions testing. The technology needed to control emissions from Defendants' cars to meet state and federal emissions regulations reduces their performance, limiting acceleration, torque, and fuel efficiency.

9.      To hide this, the defeat device effectively shuts off most of the emissions control systems in the car once the car has completed its emissions test. While that might have made the cars more fun to drive, it resulted in Defendants' cars sending up to 40 times as much pollution into the environment as is allowed under the Clean Air Act and state regulations.

CLASS ACTION COMPLAINT - Page 4

10.   As of September 21, 2015, *The New York Times* reported that while it is possible to lower the levels of nitrogen oxide emitted by diesel engines, the software Volkswagen installed instead:

> [S]idestepped this trade-off by giving a misleadingly low nitrogen-oxide reading during [standard emissions] tests. The software measured factors like the position of the steering wheel, the vehicle's speed and even barometric pressure to sense when the car was being tested….

11.   On September 30, 2015, *Compound Interest* published a graphic describing the emissions control devices installed on cars and explaining that Defendants' cars shut off some emissions control equipment when software "detected when it was in test conditions (potentially by monitoring steering wheel movement or traction control deactivation)."[1]

---

[1] http://www.compoundchem.com/wp-content/uploads/2015/09/Reducing-Vehicle-Emissions-Using-Chemistry-%E2%80%93-The-Volkswagen-Scandal.png (last visited Oct. 6, 2015).

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



12.     Volkswagen has admitted that approximately 11 million vehicles worldwide are affected by its deception. Defendants' stocks have plummeted and it reportedly is "setting aside the equivalent of half a year's profits—6.5 billion euros, or about $7.3 billion" in a preemptive maneuver to downplay public scrutiny. In a statement issued on September 18, 2015, by the Executive Committee of Volkswagen AG's Supervisory Board, the Committee confessed that it "recognizes…the economic damage caused [by the manipulation of the emissions data.]"

13.     The second EPA NOV, appended hereto as Exhibit C, describes how the Defeat Device worked in the 3.0 TDI engine:

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

As alleged in the NOV, VW manufactured and installed software in the electronic control module of these vehicles that senses when the vehicle is being tested for compliance with EPA emissions standards. When the vehicle senses that it is undergoing a federal emissions test procedure, it operates in a low NOx "temperature conditioning" mode. Under that mode, the vehicle meets emission standards. At exactly one second after the completion of the initial phases of the standard test procedure, the vehicle immediately changes a number of operating parameters that increase NOx emissions and indicates in the software that it is transitioning to "normal mode," where emissions of NOx increase up to nine times the EPA standard, depending on the vehicle and type of driving conditions. In other tests where the vehicle does not experience driving conditions similar to the start of the federal test procedure, the emissions are higher from the start, consistent with "normal mode."

14.     The California Air Resources Board also issued a second notice concerning the 3.0 liter engines on November 2, 2015. The CARB letter is appended hereto as Exhibit D.

15.     *The New York Times* reported on September 23, 2015 that Volkswagen AG's former chief executive, Martin Winterkorn, resigned, "taking responsibility for an emissions cheating scandal that has gravely damaged the carmaker's reputation." There was reportedly chatter amongst Volkswagen's executive committee of the supervisory board that criminal proceedings may begin although Winterkorn claims to have "had no knowledge of the manipulation of the emissions data."

16.     As reported by *Reuters*, Volkswagen named the head of its Porsche unit, Matthias Mueller, as its new chief executive. Mueller claims, "[u]nder my

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

leadership, Volkswagen will do all it can to develop and implement the strictest compliance and governance standards in the whole industry."

17.     That promise may be a tall order considering Germany's transport minister announced that the carmaker has "manipulated test results for about 2.8 million vehicles" in Germany, which is "nearly six times as many as it has admitted to falsifying in the United States." That indicates that Defendants are "cheating on a bigger scale than previously thought." These numbers likely did not even include the Defeat Device Vehicles equipped with the 3.0 TDI engine that the new NOV states also contains a Defeat Device.

18.     Because of Defendants' actions, the cars it sold to Plaintiffs are not what Volkswagen promised. They are not environmentally friendly, "clean" diesels. Instead, they are dirty diesels: cars that pollute so much that they violate state and federal environmental protection laws. Moreover, when the emissions systems designed to decrease pollution are activated, the cars' performance is diminished and they get worse mileage than advertised by Volkswagen.

19.     These untenable circumstances not only undermine the reasons consumers paid a premium to lease or own their purportedly "clean" diesel cars, but substantially decrease the current and resale value of the vehicles.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

### III.   PARTIES

20.   Plaintiff Chaan William Beard is a resident and citizen of Danville, Contra Costa County, California.

21.   Plaintiff Nancy Stirek is a resident and citizen of Elkhorn, Douglas County, Nebraska.

22.   Plaintiffs Matt and Tammy Moeller are residents and citizens of Gainesville, Cooke County, Texas.

23.   Plaintiff Linda Babinski is a resident and citizen of Bradenton, Manatee County, Florida.

24.   Plaintiff John Gatti is a resident and citizen of Anaheim, Orange County, California.

25.   Plaintiffs Karin and Leo McCloskey are residents and citizens of Issaquah, King County, Washington.

26.   Volkswagen Group of America, Inc. is a corporation doing business in every U.S. state and the District of Columbia and is organized under the laws of New Jersey, with its principal place of business at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171. Volkswagen is therefore a citizen of New Jersey and Virginia. *See* 28 U.S.C. § 1332(d)(10).

27.   Volkswagen AG is the parent corporation and sole owner of Volkswagen Group of America, Inc. Volkswagen AG is based in Germany and

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

directly controls and directs the actions of Volkswagen Group of America, Inc., which acts as its agent in the United States. As a result, this Court has specific jurisdiction over Volkswagen AG.

28.   Audi AG is based and incorporated in Germany and is a subsidiary of Volkswagen AG. Audi AG is an agent of Volkswagen AG and, in part, directs the operations of Audi of America, Inc. and Audi of America LLC.

29.   Audi of America, Inc. is a corporation doing business in every state and the District of Columbia, and is organized under the laws of New Jersey, with its principal place of business at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171. Audi is therefore a citizen of New Jersey and Virginia. *See* 28 U.S.C. § 1332(d)(10).

30.   Audi of America LLC is a Delaware corporation doing business in every state and the District of Columbia, with its principal place of business at 3800 W. Hamlin Road, Auburn Hills, Michigan 48326. Audi is therefore a citizen of Delaware and Michigan. *See* 28 U.S.C. § 1332(d)(10).

31.   Defendant VW Credit, Inc. ("VW Credit") is a wholly owned subsidiary of Defendant Volkswagen Group of America, Inc. and is described by Volkswagen Group of America, Inc. as "a captive finance company" that "serves our U.S. retail customer and dealers as Volkswagen Credit, Audi Financial Services, and Bentley Financial Services." *See* http://update.vw.com/about/vci.htm

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

(last visited Oct. 28, 2015). VW Credit is organized under the laws of Delaware and has its principal place of business at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171. VW Credit is therefore a citizen of Delaware and Virginia. *See* 28 U.S.C. § 1332(c). VW Credit, through its Remarketing Department, also maintains offices in Auburn Hills, Michigan.

32.     Dr. Ing. h.c. F. Porsche AG is a corporation organized and existing under the laws of the Federal Republic of Germany, having its principal place of business at Porscheplatz 1, D-70435 Stuttgart, Germany.

33.     Porsche Cars North America, Inc., is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 908 Hammond Drive NE, Atlanta, Georgia, and having a registered agent for service at the Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware, 19801.

34.     At all relevant times, Volkswagen AG and other Defendants, each of which is a direct or indirect subsidiary and agent of Volkswagen AG, manufactured, distributed, sold, leased, and warranted the Defeat Device Vehicles under the Volkswagen, Porsche, and Audi brand names throughout the nation. For this reason, throughout this Complaint, Volkswagen AG and these direct and indirect subsidiaries are referred to collectively as "Volkswagen." Volkswagen and/or its agents designed the "CleanDiesel" engines and engine control systems in

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

the Defeat Device Vehicles, including the "defeat device." Volkswagen also developed and disseminated the owners' manuals and warranty booklets, advertisements, and other promotional materials relating to the Defeat Device Vehicles.

## IV.   JURISDICTION AND VENUE

35.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

36.     This Court has personal jurisdiction over Defendants Volkswagen Group of America, Inc., Audi of America LLC, Audi of America, Inc., VW Credit, Inc., and Porsche Cars North America, Inc., because they conduct business in Michigan and have sufficient minimum contacts with Michigan.

37.     This Court has specific jurisdiction over Volkswagen AG, Porsche AG, and Audi AG because they have purposefully availed themselves of this forum by directing their agents and distributors—Volkswagen Group of America, Inc., Audi of America, Inc., Audi of America LLC, and Porsche Cars North America, Inc.—to take action here.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

38.     Volkswagen AG is the controlling owner and effective parent company of Porsche AG, one of the sub-brands in the Volkswagen Group. Porsche Cars North America, Inc., is the exclusive importer of Porsche vehicles for the United States and is a wholly-owned subsidiary of Porsche AG.

39.     Volkswagen AG is the sole owner of Volkswagen Group of America, Inc., the controlling owner of Porsche AG, and, upon information and belief, controls 99.55% of Audi AG. Upon information and belief, Audi of America LLC is an operating subsidiary of Audi AG. Audi of America, Inc. is a subsidiary of Volkswagen of America, Inc. At all relevant times, Volkswagen AG used and uses its agent Audi AG to develop and manufacture Audi branded vehicles, used and uses its agent Porsche AG to develop and manufacture Porsche branded vehicles, and used and uses its agent Volkswagen Group of America, Inc. to sell Volkswagen- and Audi-branded cars in the United States. Through its agents Audi AG and Volkswagen Group of America, Inc., Volkswagen AG also directs the actions of both Audi of America, Inc. and Audi of America LLC.

40.     Volkswagen AG uses its agent Volkswagen Group of America, Inc., to perform the critical work of developing, manufacturing, distributing, and marketing the Defeat Device Vehicles in Michigan and throughout the United States. Volkswagen AG also intimately directs the actions of Volkswagen Group

CLASS ACTION COMPLAINT - Page 13

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

of America, Inc., ranging from minute production line decisions to broad marketing strategies.

41.     Audi AG and Volkswagen Group of America, Inc., in turn, direct and use Audi of America, Inc. and Audi of America LLC for the portion of marketing and customer relations relating to the sales of Audi-branded vehicles in Michigan and throughout the United States.

42.     The remarkable level of centralized and intimate control Volkswagen AG and former CEO Winterkorn exert or have exerted over Volkswagen Group of America, Inc. and other Volkswagen subsidiaries is well-documented. Volkswagen AG itself describes this highly-centralized structure in its corporate governance document as follows: Volkswagen AG "targets and requirements [are] laid down by the Board of Management of Volkswagen AG or the Group Board of Management [and] must be complied with in accordance with the applicable legal framework."

43.     This top-down governance manifests in Volkswagen AG's intimate management of Volkswagen Group of America, Inc. For example, in 2011, when Dr. Winterkorn visited the newly built Volkswagen plant in Tennessee, *Bloomberg Business* reported that "he berated staff for hanging chrome parts for air vents, doors and gear shifts on the wall. To check that they uniformly glistened before

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

agreeing to use them in the sedan, he wanted them displayed on a table with light shining down at the same angle that customers would see the parts in the car."

44.     That single plant in Chattanooga, Tennessee is Volkswagen AG's only assembly plant in the United States, and it conducts final assembly of only one of the numerous models that Volkswagen AG sells in the United States. Even then, the majority of components and parts are manufactured in Volkswagen AG factories in Europe and around the world, or purchased from vendors, and shipped to Tennessee to be assembled. The other models that Volkswagen Group of America, Inc., Audi of America, Inc., Audi of America LLC, and Porsche Cars North America, Inc., market and sell in the United States, including vehicles at issue in this lawsuit, are assembled elsewhere in the world, including in Puebla, Mexico and Ingolstadt, Zuffenhausen, and Wolfsburg, Germany. The 2.0 and 3.0 liter TDI engines in the Defeat Device Vehicles are among the components manufactured by Volkswagen AG factories outside the United States, as are the exhaust system components used to regulate emissions. In sum, Volkswagen AG exerts significant, and sometimes total, control over the design, technology, marketing, and manufacturing of the vehicles it sells through Volkswagen Group of America, Inc., Audi of America, Inc., Audi of America LLC, and Porsche Cars North America, Inc., in Michigan and throughout the United States.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

45.     *Bloomberg Business* has also noted that "[d]ecision-making at Volkswagen is highly centralized. Winterkorn and a couple dozen managers vet product plans in Wolfsburg, including detailed lists of components that differentiate between new and standardized parts. Winterkorn was aiming to loosen that structure by pushing more authority to brand and regional managers." Volkswagen AG's attempts to decentralize are not new; indeed as far back as 2007 *The New York Times* reported that Volkswagen AG was undergoing a "broad reorganization that would centralize control over its myriad brands [including Volkswagen Group of America, Inc.] and cement the power of its new chief executive, Martin Winterkorn." Whatever decentralization Winterkorn was hoping to accomplish, however, has not yet come to pass, as he has now stepped down as Volkswagen's CEO. In short, Volkswagen AG tightly controls the actions of its agent, Volkswagen Group of America, Inc., to perform the critical task of selling its cars in the United States. As a result, this Court has specific jurisdiction over Volkswagen AG.

46.     Similarly, Audi AG closely directed the actions of its agents Audi of America LLC and/or Audi of America, Inc. in advertising and selling the cars it manufactures in Germany in the United States. As a result, this Court has specific jurisdiction over Audi AG.

**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

47.     Porsche AG, again similarly, closely directed and controlled the actions of its agent Porsche Cars North America Inc. in advertising and selling cars manufactured in Germany in the United States. As a result, this Court has specific jurisdiction over Porsche AG.

48.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District, as set forth in more detail below, and because Defendants have caused harm to Class members residing in this District, as explained below.

49.     Volkswagen conducts substantial business in this District. Until approximately 2010, Volkswagen Group of America, Inc. was headquartered in Auburn Hills, Michigan. And between 2008 and 2013, Volkswagen "invested about $12 million and added hundreds of employees at its offices in Auburn Hills."

50.     Many of the wrongdoings giving rise to Plaintiffs' claims emanated from this District. Of particular importance, Volkswagen's Engineering and Environmental Office—where, upon information and belief, the portion of the defeat device scheme that took place in the United States was centralized—was located at Auburn Hills, Michigan. Because Volkswagen maintained, and continues to maintain, critical operations in this District, on information and belief, employees in this district witnessed and/or participated in the fraudulent activities

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

giving rise to Plaintiffs' claims. Notably, when the EPA issued its first Notice of Violation, described in greater detail below, it was addressed to only two people: the Executive Vice President of Public Affairs and General Counsel at Volkswagen's Virginia offices, and Stuart Johnson, the General Manager of the Engineering and Environmental Office, at Volkswagen's Auburn Hills center.

51.     In addition, Volkswagen has marketed, advertised, sold and leased the Defeat Device Vehicles in this District, and has caused harm to Class Members residing in this District.

52.     Thus, venue is proper in this District because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.

53.     Finally, Volkswagen has already chosen to litigate this matter in Michigan. The website that Volkswagen created to communicate with its American customers about Defeat Device Vehicles, www.vwdieselinfo.com, provides that visitors to that website, and Volkswagen, "hereby consent to the jurisdiction of the Michigan courts and waive any objections as to personal jurisdiction or as to the laying of venue in such courts due to inconvenient forum or any other basis."[2]

_____

[2] Volkswagen Diesel Information, Terms of Use Policy, https://www.vwdieselinfo.com/terms-of-use-policy%20/ (last visited Oct. 14, 2015). Confusingly, the same online communication also states that the parties agree to the exclusive jurisdiction of "the state and federal courts for the County of Fairfax, Virginia, U.S.A." *Id.* That confusion appears to have been resolved in an update to the nearly identical language of the terms governing VW.com for 2008 to 2015, which reference only Michigan. Volkswagen Group of America,

## V.    FACTS

54.     Defendants intentionally designed, marketed, and sold cars in order to mislead consumers and regulators about the amount of pollution those cars created and the fuel efficiency they produced. Despite touting themselves as an environmentally-conscientious company that produced efficient, well-handling cars for people who cared about the environment, Defendants sold expensive cars that produced pollution at orders of a magnitude above federal and state regulations, and then intentionally and knowingly hid this truth.

### A.    Defendants Tout Their Diesel Vehicles as Being Fuel Efficient and Good for the Environment

55.     For years, Volkswagen has advertised its diesel vehicles as low-emission, fuel-efficient cars. Indeed, this marketing message is at the core of its image in the United States. It has been a successful advertising campaign: Volkswagen has become the largest seller of diesel passenger vehicles in the United States.

56.     Defendants' success is based in large part on promoting their diesel cars as "clean" and "green" vehicles. Indeed, being both highly efficient and "clean" are the centerpieces of Defendants' diesel engine marketing campaign. "CleanDiesel" is in the very name of the vehicles about which Defendants lied.

---

Terms & Agreements, http://update.vw.com/terms_agreements.htm (last visited Oct. 14, 2015).

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



57.     Long after Volkswagen became aware that its vehicles were deliberately designed to cheat emissions tests, and even after EPA issued a Notice of Violation, Volkswagen continued to mislead consumers, including in advertisements appearing on its webpage as recently as September 21, 2015.

58.     Those ads, an example of which is pictured below, were removed from Volkswagen's websites over the course of several days after the news broke. For example, at the time Defendants' deception came to light, Defendants continued to represent both the 2.0- and 3.0-liter TDI equipped Defeat Device Vehicles as "CleanDiesel":

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



59.     Other "CleanDiesel" advertisements also include models equipped

with both 2.0 and 3.0 liter TDI engines:



60.     Volkswagen's apparent concern for the environment is evident

beyond just the model names and purported attributes of their vehicles. For

example, on the "Environment" page of its website, Volkswagen Group of

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

America, Inc., states that it takes "environmental responsibility very seriously. When it comes to making our cars as green as possible, Volkswagen has an integrated strategy focused on reducing fuel consumption and emissions, building the world's cleanest diesel engines and developing totally new power systems, which utilize new fuel alternatives."

61.     Volkswagen bolsters its apparent environmental bona fides by trumpeting the fact that the Audi A3 TDI and VW Jetta TDI were named the 2010 Green Car of the Year and the 2009 Green Car of the Year, respectively. Shortly after the truth about Volkswagen came out in late September 2015, *Green Car Journal* rescinded those awards.

62.     Volkswagen expanded its diesel lineup to include additional, Porsche- and Audi-branded 3.0-liter TDI equipped models that are now the subject of the second EPA NOV. These vehicles were advertised as "sipping fuel" while offering cleaner emissions than gasoline models and offering excellent performance, using phrases like "beauty with benevolence," "intelligent performance," and "a cleaner future" (highlighting added). The below advertisements were live on Audi's www.audiusa.com website as of November 2, 2015:

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384





**2015 TDI® model lineup**

With everything TDI® clean diesel has to offer, it's no wonder it's the intelligent choice. It starts with incredible performance, efficiency and a range second to none. It also turns out it could make the world a cleaner place—by cutting emissions by 12%.

> View TDI® model gallery

**Clean diesel technology explained**

Understand how clean diesel technology impacts fuel efficiency and performance, while being a more eco-conscious choice.

> Explore clearly better diesel

## Models of note







**A6 TDI®**
Starting at $59,500

**Q5 TDI®**
Starting at $48,100

**A8 L TDI®**
Starting at $85,200



**Sip instead of guzzle**
The Audi A6 TDI clean diesel engine sips fuel while emitting less CO2 when compared with its gasoline counterparts.

CLASS ACTION COMPLAINT - Page 23



**Density is destiny**
The Audi A7 makes the most of every drop of diesel fuel, tapping into the inherent energy density that's 15% higher than that in the same amount of gasoline.



**Speed cleaning**
With the Variable Vane Turbocharger in our TDI® clean diesel engines, you'll never forget you're in an Audi A8.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



**A quick clean**

Think back to the sooty, black smoke and stuttering acceleration spasms of old-fashioned diesel engines. And say good riddance. The Audi Q5 TDI® clean diesel increases power and efficiency.



**Beauty and benevolence**

With its available TDI® clean diesel engine, the Audi Q7 delivers impressive fuel efficiency and a spirited driving experience.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



63.    Defendants also launched a "Think Blue" program, which they

explained is part of their policy of being "more responsible on the road and more

environmentally conscious—not just in our cars." Defendants advertised their

Think Blue Collection as "eco-conscious" on its Facebook webpage in or about

April 2014, using the image below:

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



64.     Beyond merely advertising, Defendants supported and directed a website to promote their "clean" diesel technology, www.clearlybetterdiesel.org, which says the technology reduces smog and "meets the highest standards in all 50 states, thanks to ultra-low sulfur diesel (ULSD) fuel and innovative engine technology that burns cleaner," and includes this image:

65.     To promote its Audi brand, Volkswagen even goes so far as to use the tagline "Truth in Engineering":

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



66.     An example of a television advertisement for the new Audi-branded

diesel models features this slogan and can be seen at

http://www.youtube.com/watch?v=Afwgq0wqx2g:



67.     Unfortunately for consumers who bought Defendants' cars and for

people who breathe the air into which Defendants' cars emit extraordinary amounts

of pollutants, Defendants' engineering was far from "truthful." Volkswagen has

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

designed and sold cars that emit pollutants at breath-taking levels, failing state and federal environmental regulations by incredible margins.

**B.     Volkswagen Intentionally Hid the Excessive and Illegal Levels of Pollution Emitted from Its Cars**

68.     The EPA's investigation of Volkswagen was prompted by a May 15, 2014, publication titled "In-Use Emissions Testing of Light-Duty Diesel Vehicles in the United States" by the Center for Alternative Fuels, Engines & Emissions (CAFEE) at West Virginia University ("the CAFEE Report").

69.     The International Council of Clean Transportation (ICCT) contracted CAFEE to conduct in-use testing of three light-duty diesel vehicles. According to the CAFEE Report, when they tested those vehicles, "real-world NOx emissions were found to exceed the US-EPA … standard by a factor[s] of 5 to 35."

70.     While neither emissions testing on a dynometer (essentially a treadmill for a car) nor using set driving routes meant to simulate different operational situations—such as highway, city, or hilly routes—can perfectly duplicate all real-world driving, they provide approximations of expected emissions that allow regulators and testers to determine if cars' emissions are within tolerable limits.

71.     CAFEE tested three vehicles, two of which were Volkswagens: a 2012 Jetta TDI and a 2013 Passat TDI, the latter of which was equipped with a urea catalyst system but also, apparently, a defeat device. On the dynometer, the

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Volkswagens' nitrous oxide emissions were well within allowable limits—because, it is now known, they were equipped with defeat devices that turned emissions controls fully on. But in real-world driving, these emissions controls were switched off, and the cars emitted nitrous oxides at levels orders of magnitude greater than EPA limits.

72.    In more strenuous operational situations requiring greater engine power, such as climbing steep hills, it is not surprising that a car might emit somewhat more than on a dynometer, but not by multiples or orders of magnitude. The chart below shows the test results for these cars' emissions on the dynometer compared to the EPA standard, and then in three real-world tests: one highway, one urban, and one a hilly rural route.



KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

73.     Those findings show that, contrary to Volkswagen's self-promotion as a "green" company, its diesel cars are unhealthy and unlawful.

74.     Defendants' defeat devices that cause those high levels of emissions are part of a computerized engine control system that monitors sensors throughout the cars' engine and exhaust systems and controls operation of the cars' systems to ensure optimal performance. The functions controlled by those systems include fuel injection, valve and ignition timing, and, as in Volkswagen's "CleanDiesel" engines, operation of the engine's turbocharger. The engine control computer can, for example, ensure that the air-to-fuel mixture is correct based on sensor readings such as throttle position, air flow, and engine temperature.

75.     These engine control computers also receive data from sensors in the car's exhaust system that measure the amounts of chemical substances included in the car's exhaust. That data provides a measure of the engine's operation and efficiency, and is thus used by the engine control computer in operating the car's systems to ensure the desired performance and efficiency.

76.     Because modern cars include these sophisticated computers and sensors throughout the car's systems, emissions testing sometimes uses a car's existing sensors to measure the presence of pollutants and track compliance with EPA and state emissions standards. Emissions testing stations plug a diagnostic device into the car's on-board diagnostics ("OBD II") port and use the car's own

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

exhaust sensors during the testing procedure to measure the substances emitted. Some states, instead of or in addition to an OBD II diagnostic device, use a probe inserted into the car's exhaust pipe to measure the chemicals emitted.

77.     Volkswagen programmed the engine control computers in the Defeat Device Vehicles with software that detects when the cars are undergoing emissions testing, and then operates the car's engine and exhaust systems to ensure that emissions comply with EPA pollutant standards. When the car is not being emissions tested—that is, under the vast majority of operating conditions—the engine control systems operate the vehicle in a manner that does not comply with EPA emissions requirements.

78.     This graphic prepared by *Reuters* summarizes that process:

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



79.     In short, this software allows Defendants' Defeat Device Vehicles to meet emissions standards in labs or state testing stations while permitting the vehicles to emit nitrogen oxides (NOx) at up to 40 times the standard allowed under United States laws and regulations during normal operation.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

80.     As the journal *Popular Mechanics* recently reported, non-Volkswagen diesels commonly use urea injection to "neutralize" NOx emission, but those systems add weight and complexity. "Everyone wondered how VW met emissions standards while foregoing urea injection. As it turns out, they didn't. It wasn't magical German engineering. Just plain old fraud," the journal reported. EPA and CARB have now announced that even in 3.0- liter vehicles equipped with urea injection systems, Volkswagen used "defeat device" software, and these vehicles still emitted NOx at up to nine times permitted levels.

81.     NOx pollution contributes to nitrogen dioxide, ground-level ozone, and fine particulate matter. Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illnesses serious enough to send people to the hospital. Ozone and particulate matter exposure have been associated with premature death due to respiratory-related or cardiovascular-related effects. Children, the elderly, and people with pre-existing respiratory illnesses are at an acute risk of health effects from these pollutants.

82.     The Clean Air Act has strict emissions standards for vehicles, and it requires vehicle manufacturers to certify to the EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution. Every vehicle sold in the United States must be covered by an EPA-issued certificate of conformity. Under federal law, cars equipped with defeat devices,

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

which reduce the effectiveness of emissions control systems during normal driving conditions, cannot be certified.

83.    Remarkably, Volkswagen has already admitted that it violated state and federal laws, including CARB standards and the Clean Air Act:



84.    This is not the first time Volkswagen allegedly engineered vehicles to cheat emission standards. As reported by the *Los Angeles Times* on September 23, 2015, Volkswagen paid a $120,000 fine to EPA in 1974 in order to settle charges that "it gamed pollution control systems in four models by changing carburetor settings and shutting off an emissions-control system at low temperatures."

85.    Moreover, it appears Volkswagen was warned as long ago as 2007 by its suppliers and own employees not to cheat on emissions tests in its modern

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

diesel engines. According to September 27, 2015 report by the *Associated Press*, "VW's internal investigation has found a 2007 letter from parts supplier Bosch warning Volkswagen not to use the software during regular operation." Also, "a Volkswagen technician raised concerns about illegal practices in connection with emissions levels in 2011."

86.     Despite those warnings, Volkswagen manufactured, marketed, and sold cars with defeat devices designed to allow for higher levels of emissions than those allowed by state and federal law, violating the Clean Air Act, defrauding its customers, and engaging in unfair competition under state and federal laws.

## C.     Defendants Have Profited Handsomely From Their Diesel Vehicles

87.     Defendants charge and consumers pay substantial premiums for the Defeat Device Vehicles. For example, according to Defendants' website, for the 2015 Volkswagen Jetta, the base S model with a gasoline engine has a starting MSRP of $18,780. The base TDI S CleanDiesel, however, has a starting MSRP of $21,640, which includes a price premium of $2,860. The CleanDiesel premium compared to the highest trim Jetta models with a comparable four-cylinder turbocharged gasoline engine is substantially higher: the Jetta SE has a starting MSRP of $20,095, while the CleanDiesel TDI SEL MSRP is $26,410, a 31% premium. Audi A6, A7, and Q5 3.0 TDI models carry a suggested MSRP $2100 greater than the comparable gasoline models. Meanwhile, the 3.0 TDI version of

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

the Audi A8L costs $85,200, compared to $81,500 for the comparable gasoline model.

88.     These premiums occur across all of the vehicles in which Defendants installed its "defeat device" for emissions testing, ranging from roughly $1,000 for a mid-tier Golf, to $2,900 for a base-level diesel Jetta, to nearly $7,000 for a top-line diesel Passat.

**D.    Volkswagen's Illegal Actions Have Caused Class Members Significant Harm**

89.     The EPA has ordered Defendants to repair the Defeat Device Vehicles so that they comply with EPA emissions requirements. But such a repair will not compensate Plaintiffs and the class for the significant harm Defendants' deception has caused. That is true for at least two reasons.

90.     First, any repairs performed as part of the recall are likely to diminish the performance of the Defeat Device Vehicles. Volkswagen will likely not be able to make those vehicles compliant with state and federal regulations without degrading performance, fuel efficiency, or both. That is so because any solution will likely involve reprogramming the Defeat Device Vehicles' software to engage the emissions control equipment (which currently only operates when the vehicles are being emissions tested) at all times in a manner that reduces engine power and fuel economy to bring NOx emissions within legal limits. Plaintiffs' and Class members' cars will therefore not perform as advertised.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

91.     Second, the recall cannot compensate for the financial damages Plaintiffs and Class members have suffered, including the premium Plaintiffs and the Class paid to own or lease their "clean" diesel vehicles, the inevitable reduction in resale value caused by the recall, and the increase in fuel expenses as the vehicles become less efficient following reprogramming.

92.     The resale values of Plaintiffs' and Class members' vehicles have also dropped since the announcement of Volkswagen's emission defeat device. For example, Kelley Blue Book, www.kbb.com, is known as the nationwide "go-to" pricing guide for used cars. Kelley Blue Book ("KBB") has an established car valuation methodology and its values are broadly accepted in the industry by both buyers and sellers of used cars. Information from Kelley Blue Book for the 2.0 liter vehicles covered by the first NOV shows that there values dropped rapidly. A 2013 Jetta in very good condition with 2,400 miles dropped nearly $1,000 in less than a week. The September 22, 2015 price quote (valid through September 24, 2015) was $16,573. Just five days later, on September 27, 2015 (valid through October 1, 2015), the same car received a KBB value of $15,878:

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



93.    Third, Plaintiffs and Class members are already experiencing reputational harm as unwilling vectors for Defendants' pollution-producing vehicles.

94.    For those reasons, as a result of Volkswagen's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Defeat Device Vehicles emit many times the allowed

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

levels of NOx, owners and/or lessees of the Defeat Device Vehicles have suffered losses in money and/or property.

95.    Had Plaintiffs and Class members known of the "defeat device" at the time they purchased or leased their Defeat Device Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

96.    According to media sources, Volkswagen's recently ousted CEO, Martin Winterkorn, said in a statement that he was "deeply sorry that we have broken the trust of our customers and the public," and that Defendants would be suspending sales of some 2015 and 2016 vehicles with diesel engines. While Defendants' very recent candor about its breach of trust is notable, it cannot compensate Plaintiffs and Class members for the damages they have incurred.

97.    Moreover, it now appears that many 2014, 2015, and 2016 vehicles equipped with the 3.0 liter TDI engine, in addition to the 2.0 liter engines covered by the first NOV, had "defeat devices" as well—a fact which Mr. Winterkorn did not admit to the public, and which Mr. Horn, CEO of Volkswagen of America, did not admit when he testified before Congress.

98.    In sum, Volkswagen's deliberate strategy to value profit over the truth, human health, and the environment, has caused serious harm to consumers nationwide.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

E.     **The Federal Authorities' Investigation of Volkswagen Centers on Its Activities in Michigan**

99.    According to *The Detroit News*, Defendants are under investigation by German prosecutors, at least 29 U.S. state attorney generals, and the U.S. Justice Department aided by the Federal Bureau of Investigation (FBI).[3] These ongoing investigations are occurring in this District,[4] where the EPA has its National Vehicle & Fuel Emissions Laboratory in Ann Arbor and where Volkswagen has a significant and relevant presence.

100.    John German, the researcher who led the International Council on Clean Transportation investigation that brought Defendants' deception to light is also based in Ann Arbor.[5]

101.    EPA addressed its first Notice of Violation to two individuals at Volkswagen: the General Counsel for Volkswagen Group of America, Inc. and Stuart Johnson, General Manager of the Engineering and Environmental Office of Volkswagen Group of America, Inc. in Auburn Hills, Michigan. Similarly, the California Air Resources Board ("CARB") also issued its notice of investigation

---

[3] http://www.detroitnews.com/story/business/autos/foreign/2015/09/28/vw-senators/72989290/.

[4] "The FBI in Detroit is reportedly handling a US criminal investigation" as well. http://www.telegraph.co.uk/finance/newsbysector/industry/11895848/BREAKING-2.1-million-Audi-cars-fitted-with-VW-emissions-cheat-devices.html (last visited Oct. 6, 2015).

[5] http://www.theguardian.com/business/2015/sep/26/volkswagen-scandal-emissions-tests-john-german-research (last visited Oct. 12, 2015).

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

regarding Volkswagen's use of defeat devices to Mr. Johnson at the Engineering and Environmental Office ("EEO") of Volkswagen Group of America, Inc. in Auburn Hills, Michigan.[6] The second NOV included additional recipients but also went to Mr. Johnson, as did the second CARB letter.

102.   Defendants are closely tied to the Detroit region and relevant documents and witnesses are likely located in the Detroit metropolitan area. Volkswagen leases office space in Auburn Hills for approximately 1,200 employees.[7]

103.   Volkswagen's EEO office in Auburn Hills has been the hub of Volkswagen's engineering and environmental compliance activities in the United States,[8] as well as the source of its representations about its diesel engines in the United States.[9] On October 8, 2015, Volkswagen Group of America, Inc., CEO Michael Horn testified before the Energy & Commerce Committee of the United States House of Representatives that "[w]e have an office which is called EEO

---

[6] http://www.arb.ca.gov/newsrel/in_use_compliance_letter.pdf (last visited Oct. 6, 2015).

[7] http://www.crainsdetroit.com/article/20110110/FREE/110119976/volkswagen-plans-upgrade-at-auburn-hills-office (last visited Oct. 9, 2015).

[8] http://athome.volkswagengroupamerica.com/documents/at_work_in_michigan.pdf (last visited Oct. 2, 2015).

[9] *See*, *e.g.*, http://www.mlive.com/auto/index.ssf/2013/08/volkswagen_announces_new_diese.html (last visited Oct. 6, 2015); http://www.autonews.com/article/20140914/OEM06/309159997/how-automakers-suppliers-are-preparing-for-tougher-emissions-rules (last visited on Oct. 5, 2015).

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

[Volkswagen's Engineering and Environmental Office] in Auburn Hills which is directly linked to the German research and development department. They work together. They get all the information, all the results, testing things, technical specifications and then they file the applications for conformity.[10]" Additionally, Volkswagen's Auburn Hills EEO's role was "to work directly on a working level, on a management level, on a daily basis; with E.P.A. and C.A.R.B."[11] Thus, employees in Auburn Hills possibly participated in or witnessed the events surrounding the discovery of the defeat devices.

104.    Michigan Senator Frank Upton issued an opening statement at the October 8, 2015 hearing and said:

> VW will inevitably pay a steep price for its dirty little secret. How it responds to this failure will go a long way to rebuilding, or further eroding, the public's trust. VW must also consider what implications these actions have for the thousands of Americans it employ[s], including at their facility in Auburn Hills, Michigan. Every single one of us who has ties to Michigan is proud of our rich tradition that is so closely intertwined with the success of the automobile. In fact, Michigan is one of several states that have launched their own investigations. Recent reports are sickening, and cannot be tolerated. All automakers must advance by imagination and innovation—not by gaming the system and breaking the law.[12]

---

[10] Hearing on "Volkswagen's Emissions Cheating Allegations: Initial Questions" closed-captioning transcript dated Oct. 8, 2015 at 01:24:44.

[11] *Id.* at 02:06:30.

[12] Opening Statement of the Honorable Fred Upton, Subcommittee on Oversight and Investigations Hearing on "Volkswagen's Emissions Cheating Allegations: Initial Questions," *available at* http://energycommerce.house.gov/sites/

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**F.    VW Credit, Inc. Financed the Purchases of Defeat Device Vehicles**

105.   Defendant VW Credit provided retail financing for consumers who purchased Volkswagen and Audi vehicles, including Defeat Device Vehicles.

106.   Plaintiffs and the members of the Financing Subclass financed their purchases of Defeat Device Vehicles through VW Credit, pursuant to Credit Contracts.

107.   Pursuant to the Federal Trade Commission's Trade Regulation Rule Concerning Preservation of Consumer's Claims and Defenses, commonly known as the "Holder Rule," 16 C.F.R. § 433, the Credit Contracts of Plaintiffs and the members of the Financial Subclass were required to provide the following notice:

> ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED [PURSUANT HERETO OR] WITH THE PROCEEDS HEREOF.  RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

16 C.F.R. § 433.2.

108.   The Holder Rule was "designed to prevent the widespread use of credit terms which compel consumers to pay a creditor even if the seller's conduct would not entitle the seller to be paid. It is designed to preserve the consumer's

---

republicans.energycommerce.house.gov/files/114/Hearings/OI/20151008/HHRG-114-IF02-MState-U000031-20151008.pdf (dated Oct. 8, 2015).

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

legally sufficient claims and defenses so that they may be asserted to defeat or diminish the right of a creditor to be paid, where a seller who arranges financing for a buyer fails to keep his side of the bargain." 41 Fed. Reg. 20,022, 20,023 (May 14, 1976). The Holder Rule is premised on the notion that "[b]etween an innocent consumer, whose dealing with an unreliable seller are, at most, episodic, and a finance institution …, the financer is in a better position to protect itself and to assume the risk of a seller's reliability." 40 Fed. Reg. 53,506, 53,509 (Nov. 18, 1975).

109.   In accordance with the Holder Rule, Plaintiffs and the members of the Financing Subclass may assert against VW Credit those claims they have against the sellers of the Defeat Device Vehicles and may recover from VW Credit such relief as they are entitled to recover from the sellers of the Defeat Device Vehicles, including damages and revocation of acceptance.

## VI.   PLAINTIFFS' FACTS

### A.   Plaintiff Chaan William Beard

110.   Plaintiff Chaan William Beard, a resident of Danville, California, purchased a new 2015 Audi A3 TDI on or about September 3, 2015, from Audi of Concord in Concord, California. When he did so, Mr. Beard traded in a 2012 Audi A3 TDI that he had also purchased new.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

111.   Mr. Beard financed the purchases of both vehicles. When he purchased the 2015 A3 and traded in the 2012 model, he rolled the unpaid portion of the auto loan secured by the 2012 model into the new loan. The lender is VW Credit, Inc., doing business as Audi Financial Services.

112.   Mr. Beard chose the Audi A3 TDI primarily because Defendants advertised the vehicle as combining excellent fuel economy and environmentally friendly "Clean Diesel" emissions with strong performance.

113.   Mr. Beard paid a premium for the "Clean Diesel" Audi A3 TDI. Had he known that the car did not meet EPA emissions standards, or that it would have to undergo modifications to make it EPA-compliant that will likely reduce its performance and economy, he would never have bought it in the first place, much less paid a premium for it. Mr. Beard is disappointed to learn of Defendants' deceptive conduct and believes that Defendants' actions have significantly diminished the current and future resale value of his Audi.

**B.    Plaintiff Nancy Stirek**

114.   Plaintiff Nancy Stirek, a resident of Elkhorn, Nebraska, bought a new 2011 Jetta Sportwagen TDI at Performance Volkswagen in Omaha on February 28, 2011, paying approximately $26,835.00, financing the balance of $18,317.00 with a loan thru VW Credit.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

115.   Ms. Stirek, an energy specialist at a large Midwest facilities services firm, carefully research the Sportwagen's performance characteristics. In particular, she was interested in the Sportwagen's promised mix of high fuel economy and low emissions.

116.   Those features, coupled with the car's driving, prompted her to choose it over a Toyota Prius, Chevy Malibu Hybrid, Chevy Volt, and similar vehicles. Based on information provided by Volkswagen, she believed the Jetta was truly a "clean" diesel.

117.   Now that Volkswagen has admitted it deceived her, she believes the car is worth far less than she paid for it, and that any recall will reduce her car's fuel-efficiency.

118.   Ms. Stirek has therefore been harmed because she paid a premium for a car based on representations about qualities it did not have, and the resale value on her Sportwagen has dropped dramatically.

## C.   Plaintiffs Matt and Tammy Moeller

119.   Plaintiffs Matt Moeller and Tammy Moeller, residents of Gainesville, Texas, purchased a 2014 Jetta Sport Wagon from a dealership in Lewisville, Texas in 2014. For this diesel Volkswagen, they paid approximately $30,000.

120.   The Moellers chose the diesel Volkswagen because Defendants advertised it as being a very fuel efficient car that is environmentally friendly and

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

EPA-compliant. They were willing to pay the premium price for the diesel model of this Volkswagen over other vehicles, such as the gasoline Jetta, because it offered the key features of being fuel efficient and clean. They were also willing to pay a premium price for the fuel the vehicle used because of the purported high fuel-efficiency of the diesel engine.

121.   The Moellers have been damaged by Volkswagen's fraudulent and deceptive conduct. They would not have purchased this diesel Volkswagen had they known the truth about its emissions; nor would they have paid a premium for this car.

**D.     Plaintiff Linda Babinski**

122.   Plaintiff Linda Babinski lives in Bradenton, Florida. Ms. Babinski is the current owner of a 2015 TDI Golf that she purchased from Boast Volkswagen in Bradenton in March, 2015. She had previously purchased other Volkswagen cars from this dealership.

123.   Ms. Babinski paid approximately $31,400 for her 2015 Golf. Included in the price was a premium mark-up because she was buying a diesel car that was represented as offering high fuel efficiency, low emissions, and enhanced driving performance.

124.   Together with the car, Ms. Babinski also paid for a "Platinum Policy" that offered her free maintenance and free roadside assistance for her car for six

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

years. After the news of the Volkswagen diesel defeat device became public on September 18, 2015, Ms. Babinski contacted her dealership to ask it to provide her relief based on the rapidly diminishing value of her 2015 Golf. The dealership told her that Volkswagen as a corporation would "take care" of things for her.

125.   Ms. Babinski financed the purchase of her 2015 Golf through VW Credit, Inc. at a 3.99% interest rate. On September 25, 2015, Ms. Babinski wrote to VW Credit asking them to eliminate her interest rate because the value of her car had plummeted. In response, she was told by "Terry" at VW Credit that she had signed a "binding contract" with VW Credit and that she must continue to pay the 3.99% interest rate on the loan. Thereafter Ms. Babinski received correspondence from Volkswagen Group of America, Inc. dated September 29, 2015 identifying her vehicle as one of the cars affected, and claiming full responsibility for the diesel defeat device problem.

126.   Ms. Babinski is concerned that her 2015 Golf has been emitting pollutants at a much higher rate than she understood would be the case. She is concerned that Volkswagen represented to her a pollution standard that her 2015 Golf never satisfied. Ms. Babinski is also concerned that the value of her car has decreased significantly because of Volkswagen's misrepresentations. She is concerned about the likely impact on her car's performance or fuel efficiency after any proposed "fix" of the car's emission controls.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

127.    Because Ms. Babinski purchased a Platinum Policy along with her car, at least two of the three aspects of Volkswagen's recently announced "Goodwill Program" are meaningless to her. She does not believe she will be able to use the $500 of credit at a Volkswagen dealership because her maintenance repairs on her new car have already been paid for through her purchase of the Platinum Policy, and she has no present intention to buy another Volkswagen. In addition, the Platinum Policy includes a 6-year roadside maintenance policy, so that aspect of the Goodwill Program does not provide her with any value.

128.    If Ms. Babinski had known the truth that Volkswagen had installed an emission "defeat device" in her car that rendered untrue its statements about the car's low emissions and environmental impacts, and reduced the car's value, she would not have bought the car, and she certainly would not have paid a premium for it.

## E.    Plaintiff John Gatti

129.    Plaintiff John Gatti, a resident of Anaheim, California, purchased a 2015 Golf TDI from a dealership in Corona, California in 2014. For this diesel Volkswagen, he paid approximately $27,569.

130.    Mr. Gatti chose the diesel Volkswagen because Defendants advertised it as being a very fuel efficient car that is environmentally friendly and EPA-compliant. He was willing to pay the premium price for the diesel model of

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Volkswagen over other vehicles, such as the gasoline Golf, because it offered the key features of being fuel efficient and clean. He was also willing to pay a premium price for the fuel the vehicle used because of the purported high fuel-efficiency of the diesel engine.

131.   Mr. Gatti has been damaged by Volkswagen's fraudulent and deceptive conduct. He would not have purchased his diesel Volkswagen had he known the truth about its emissions; nor would he have paid a premium for this car.

**F.    Plaintiffs Karin and Leo McCloskey**

132.   Plaintiffs Karin and Leo McCloskey, residents of Issaquah, Washington, purchased a 2009 Passat TDI from a dealership in Puyallup, Washington, in 2012. For this diesel Volkswagen, they paid approximately $30,905.17.

133.   The McCloskeys chose the diesel Volkswagen because Defendants advertised it as being a very fuel efficient car that is environmentally friendly and EPA-compliant. They were willing to pay the premium price for the diesel model of this Volkswagen over other vehicles, such as the gasoline Jetta, because it offered the key features of being fuel efficient and clean.

134.   The McCloskeys have been damaged by Volkswagen's fraudulent and deceptive conduct. They would not have purchased their diesel Volkswagen had

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

they known the truth about its emissions; nor would they have paid a premium for this car.

## VII.   CLASS ACTION ALLEGATIONS

135.   Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class:

**The Class**

All persons or entities in the United States who are current or former owners and/or lessees of a diesel "Defeat Device Vehicle." Defeat Device Vehicles include, without limitation: Model Year ("MY") 2009-2015 Volkswagen Jetta, 2009-2014 Volkswagen Jetta Sportwagen, 2012-2015 Volkswagen Beetle and Beetle Convertible, 2010-2015 Volkswagen Golf, 2015 Volkswagen Golf Sportwagen, 2012-2015 Volkswagen Passat, 2010-2015 Audi A3; 2014 Volkswagen Touareg, 2015 Porsche Cayenne, and 2016 Audi A6 Quattro, A7 Quattro, A8, A8L, and Q5.

136.   Plaintiffs Beard, Babinski and Stirek also bring this action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and the following Subclass:

**The Financing Subclass**

All persons or entities in the United States who are current or former owners of a diesel "Defeat Device Vehicle" who financed the purchase of the Defeat Device Vehicle through VW Credit, Inc. Defeat Device Vehicles include, without limitation: Model Year ("MY") 2009-2015 Jetta, MY 2009-2014 Jetta Sportwagen, MY 2012-2015 Beetle and Beetle Convertible, MY 2010-2015 Golf, MY 2015 Golf Sportwagen, MY 2012-2015 Passat, and MY 2010-2015 Audi A3.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

137.    Excluded from the Class and the Financing Subclass are individuals who have personal injury claims resulting from the "defeat device" in the CleanDiesel system. Also excluded from the Class and Subclass are Volkswagen and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class and Subclass; governmental entities; and the judge to whom this case is assigned and his/her immediate family. Plaintiffs reserve the right to revise the Class and Subclass definition based upon information learned through discovery.

138.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

139.    This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

**1.    Numerosity: Federal Rule of Civil Procedure 23(a)(1)**

140.    The members of the Class and Financing Subclass are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believe that there are not less than hundreds of thousands of members of the Class and Financing Subclass, the precise number of Class members is unknown to Plaintiffs, but it may be

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

ascertained from Volkswagen's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

### 2. Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)

141.   This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

(a)   Whether Volkswagen engaged in the conduct alleged herein;

(b)   Whether Volkswagen designed, advertised, marketed, distributed, leased, sold, or otherwise placed Defeat Device Vehicles into the stream of commerce in the United States;

(c)   Whether the CleanDiesel engine system in the Defeat Device Vehicles contains a defect in that it does not comply with EPA requirements;

(d)   Whether the CleanDiesel engine systems in Defeat Device Vehicles can be made to comply with EPA standards without substantially degrading the performance and/or efficiency of the Defeat Device Vehicles;

(e)   Whether Volkswagen knew about the "defeat device" and, if so, how long Volkswagen has known;

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

(f)     Whether Volkswagen designed, manufactured, marketed, and distributed Defeat Device Vehicles with a "defeat device;"

(g)     Whether Volkswagen's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

(h)     Whether Plaintiffs and the other Class members overpaid for their Defeat Device Vehicles;

(i)     Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief;

(j)     Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount; and

(k)     Whether Volkswagen continues to unlawfully conceal and misrepresent whether additional vehicles, besides those in the EPA's Notices of Violation, are in fact Defeat Device Vehicles.

### 3.     Typicality: Federal Rule of Civil Procedure 23(a)(3)

142.   Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Volkswagen's wrongful conduct as described above.

### 4.     Adequacy: Federal Rule of Civil Procedure 23(a)(4)

143.   Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of other members of the Class they seek to represent;

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute the action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

### 5.   Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2)

144.   Volkswagen has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

### 6.   Superiority: Federal Rule of Civil Procedure 23(b)(3)

145.   A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Volkswagen, so it would be impracticable for members of the Class to individually seek redress for Volkswagen's wrongful conduct.

146.   Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VIII.  ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED

### A.    Discovery Rule Tolling

147.    The tolling doctrine was made for cases of concealment like this one. For the following reasons, any otherwise-applicable statutes of limitation have been tolled by the discovery rule with respect to all claims.

148.    Through the exercise of reasonable diligence, and within any applicable statutes of limitation, Plaintiffs and members of the proposed Class could not have discovered that Volkswagen was concealing and misrepresenting the true emissions levels of its vehicles, including but not limited to its use of defeat devices.

149.    As reported in *The New York Times* on September 19, 2015, the International Council on Clean Transportation, a research group, first noticed the difference between Volkswagen's emissions in testing laboratories and in normal use on the road. The International Council on Clean Transportation brought the defeat device issue to the attention of the EPA. The EPA, in turn, conducted further tests on the vehicles, and ultimately uncovered the unlawful use of the defeat device software. Only a further governmental investigation following the first

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

NOV revealed the inclusion of the defeat device software in 3.0 liter vehicles as well as the 2.0 liter engines included in the first NOV. Thus, Volkswagen's deception with respect to its CleanDiesel engines, engine control systems, and "defeat devices" was painstakingly concealed from consumers and regulators alike.

150.   Plaintiffs and the other Class members could not reasonably discover, and did not know of facts that would have caused a reasonable person to suspect, that Volkswagen intentionally failed to report information within its knowledge to federal and state authorities, its dealerships, or consumers.

151.   Likewise, a reasonable and diligent investigation could not have disclosed that Volkswagen had information in its sole possession about the existence of its sophisticated emissions deception and that it concealed that information, which was discovered by Plaintiffs immediately before this action was filed. Plaintiffs and other Class members could not have previously learned that Volkswagen valued profits over compliance with applicable federal and state emissions and consumer law.

**B.     Tolling Due To Fraudulent Concealment**

152.   Throughout the relevant time period, all applicable statutes of limitation have been tolled by Volkswagen's knowing and active fraudulent concealment and denial of the facts alleged in this Complaint.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

153.   Instead of disclosing its deception, or that the emissions from the Defeat Device Vehicles were far worse than represented, Volkswagen falsely represented that its vehicles complied with federal and state emissions standards, and that it was a reputable manufacturer whose representations could be trusted.

## C.   Estoppel

154.   Volkswagen had a continuous duty to disclose to Plaintiffs and the other Class members the facts that it knew about the emissions from Defeat Device Vehicles, and of those vehicles' failure to comply with federal and state laws.

155.   Although it had the duty throughout the relevant period to disclose to Plaintiffs and Class members that it had engaged in the deception described in this Complaint, Volkswagen chose to evade federal and state emissions and clean air standards with respect to the Defeat Device Vehicles, and it intentionally misrepresented its blatant and deceptive lack of compliance with state law regulating vehicle emissions and clean air.

156.   Thus, Volkswagen is estopped from relying on any statutes of limitations in defense of this action.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

# IX.   CAUSES OF ACTION

**A.**   **Claims Asserted on Behalf of the Class**

## COUNT I:
## FRAUD BY CONCEALMENT
### (Common Law)

157.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

158.   Plaintiffs bring this claim on behalf of the Class.

159.   Volkswagen intentionally concealed and suppressed material facts concerning the quality and character of the Defeat Device Vehicles. As alleged in this Complaint, Volkswagen engaged in deception to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutants, which contributes to the creation of ozone and smog.

160.   The software installed on the vehicles at issue was designed nefariously to kick in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced readings that do not reflect normal operations. Reportedly, Volkswagen's deliberate, secret deception resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

161.   Plaintiffs and Class members reasonably relied upon Volkswagen's false representations. They had no way of knowing that Volkswagen's

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

representations were false and gravely misleading. As alleged herein, Volkswagen employed extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

162.   Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.

163.   As one representative customer, Kathy Muscato of Rochester, New York, explained in a tweet the day the EPA announced the Notice of Violation, she felt "betrayed" by Volkswagen:



164.   Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its deception to regulators or consumers, including Plaintiffs and Class members. Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

certified previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that its vehicles likewise comply with applicable laws and regulations.



165.   Volkswagen's false representations were material to consumers, both because they concerned the quality of the Defeat Device Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

air and emissions, and also because the representations played a significant role in the value of the vehicles. As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were clean diesel cars, and they paid accordingly.

166.   Volkswagen had a duty to disclose the emissions deception it engaged in with respect to the vehicles at issue because knowledge of the deception and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its deception, and because Volkswagen knew the facts were unknown to or not reasonably discoverable by Plaintiffs or Class members.

167.   Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as clean diesel cars, or cars with clean diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions deception, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue.

168.   Having volunteered to provide information to Plaintiffs and the Class, Volkswagen had the duty to disclose the entire truth. These omitted and concealed

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

facts were material because they directly affect the value of the Defeat Device
Vehicles purchased or leased by Plaintiffs and Class members. Whether a
manufacturer's products comply with federal and state clean air law and emissions
regulations, and whether that manufacturer tells the truth with respect to such
compliance or non-compliance, are material concerns to a consumer, including
with respect to the emissions certifications testing their vehicles must pass.
Volkswagen represented to Plaintiffs and Class members that they were purchasing
clean diesel vehicles, and certification testing appeared to confirm this—except
that, secretly, Volkswagen had thoroughly subverted the testing process.

169.   Volkswagen actively concealed and/or suppressed these material
facts, in whole or in part, to pad and protect its profits and to avoid the perception
that its vehicles did not or could not comply with federal and state laws governing
clean air and emissions, which perception would hurt the brand's image and cost
Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

170.   On information and belief, Volkswagen has still not made full and
adequate disclosures, particularly as to past conduct, and continues to defraud
Plaintiffs and Class members by concealing material information regarding both
the emissions qualities of its vehicles and its emissions deception.

171.   Plaintiffs and Class members were unaware of the omitted material
facts referenced herein, and they would not have acted as they did if they had

CLASS ACTION COMPLAINT - Page 64

known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified. Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

172.   Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damages because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen-, Porsche-, and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies. Had Plaintiffs and Class members been aware of Volkswagen's emissions deceptions with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

173.   The value of Plaintiffs' and Class members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions deception, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Defeat Device Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

174.   Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

175.   Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen. Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

176.   Plaintiffs plead this count pursuant to the laws of Michigan, where Volkswagen has its significant operations, on behalf of all members of the Class. As necessary, and in the alternative, Plaintiffs may allege sub-classes, based on the residences at pertinent times of members of the Class, to allege fraudulent concealment under the laws of states other than Michigan.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## COUNT II:
## BREACH OF CONTRACT

177.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

178.   Plaintiffs bring this Count on behalf of the Class.

179.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the "defeat device" and/or defective design as alleged herein, caused Plaintiffs and the other Class members to make their purchases or leases of their Defeat Device Vehicles. Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Defeat Device Vehicles, would not have purchased or leased these Defeat Device Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and the "defeat device." Accordingly, Plaintiffs and the other Class members overpaid for their Defeat Device Vehicles and did not receive the benefit of their bargain.

180.   Each and every sale or lease of a Defeat Device Vehicle constitutes a contract between Volkswagen and the purchaser or lessee. Volkswagen breached these contracts by selling or leasing Plaintiffs and the other Class members defective Defeat Device Vehicles and by misrepresenting or failing to disclose the existence of the "defeat device" and/or defective design, including information

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

known to Volkswagen rendering each Defeat Device Vehicle less safe and emissions compliant, and thus less valuable, than vehicles not equipped with CleanDiesel engine systems and "defeat devices."

181.   As a direct and proximate result of Volkswagen's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III:
## BREACH OF EXPRESS WARRANTY

182.   Plaintiffs incorporate by reference every prior and subsequent allegation of this Complaint as if fully restated here.

183.   Plaintiffs bring a cause of action against Defendants for breach of express warranty on behalf of themselves and the Class.

184.   Defendants made numerous representations, descriptions, and promises to Plaintiffs and Class members regarding the performance and emission controls of its diesel vehicles.

185.   For example, Volkswagen included in manuals for some or all of their Defeat Device Vehicles the warranty that its vehicles were "designed, built and equipped so as to conform at the time of sale with all applicable regulations of the United States Environmental Protection Agency," or similar language:

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**Federal Emissions Control System Defect Warranty**

**For 2 years or 24,000 miles**

Volkswagen of America, Inc., an operating unit of Volkswagen Group of America, Inc. ("Volkswagen"), the authorized United States importer of Volkswagen vehicles, warrants to the original retail purchaser or original lessee for every **model year 2015** Volkswagen vehicle imported by Volkswagen:

● Was designed, built and equipped so as to conform at the time of sale with all applicable regulations of the United States Environmental Protection Agency (EPA), and

● Is free from defects in material and workmanship which causes the vehicle to fail to conform with EPA regulations for 2 years after the date of first use or delivery of the vehicle to the original retail purchaser or original lessee or until the vehicle has been driven 24,000 miles, whichever occurs first.

186.   Volkswagen made similar representations that its emission systems complied with state law, for example:

Volkswagen of America, Inc., an operating unit of Volkswagen Group of America, Inc. (Volkswagen), warrants to the original retail purchaser or original lessee and any subsequent purchaser or lessee that every **model year 2010** Volkswagen vehicle imported by Volkswagen and certified for sale and registered in California:

● was designed, built and equipped so as to conform with all applicable requirements of the California Air Resources Board ("CARB") and

187.   Defendants, however, knew or should have known that their representations, descriptions, and promises were false. Defendants were aware that

CLASS ACTION COMPLAINT - Page 69

they had installed defeat devices in the vehicles it sold to Plaintiffs and Class members.

188.   Plaintiffs and Class members reasonably relied on Volkswagen's representations in purchasing "clean" diesel vehicles. Those vehicles, however, did not perform as was warranted. Unbeknownst to Plaintiffs, those vehicles included devices that caused their emission reduction systems to perform at levels worse than advertised. Those devices are defects. Accordingly, Volkswagen breached its express warranty by providing a product containing defects that were never disclosed to the Plaintiffs and Class members.

189.   As a direct and proximate result of Volkswagen's false and misleading representations and warranties, Plaintiffs and Class members suffered significant damages and seek the relief described below.

## COUNT IV:
## BREACH OF IMPLIED WARRANTY

190.   Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

191.   Plaintiffs bring this cause of action against Volkswagen for breach of implied warranty on behalf of themselves and the Class.

192.   Volkswagen made numerous representations, descriptions, and promises to Plaintiffs and Class members regarding the functionality of Volkswagen's "clean" diesel technology.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

193.   Plaintiffs and Class members reasonably relied on Volkswagen's representations in purchasing the Defeat Device Vehicles.

194.   As set forth throughout this Complaint, Volkswagen knew that its representations, descriptions and promises regarding its diesel engines were false.

195.   When Plaintiffs and Class members purchased Volkswagen's diesel vehicles, they did not conform to the promises or affirmations of fact made in Volkswagen's promotional materials, including that the vehicles were designed to meet the most demanding environmental standards. Instead, as alleged above, those vehicles were designed to cheat those standards, and the vehicles emitted far higher levels of pollution than promised.

196.   The Defeat Device Vehicles thus failed to conform to Volkswagen's implied warranty regarding their functionality.

197.   As a direct and proximate result of Volkswagen's false and misleading representations and warranties, Plaintiffs and Class members suffered significant injury when Volkswagen sold them cars that, it is now clear, are worth far less than the price Plaintiffs and Class members paid for them. Accordingly, Plaintiffs and the Class seek the relief described below.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**COUNT V:**
**IMPLIED AND WRITTEN WARRANTY**
**Magnuson - Moss Warranty Act (15 U.S.C. §§ 2301,** *et seq.***)**

198.   Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

199.   Plaintiffs assert this cause of action on behalf of themselves and the other members of the Class.

200.   This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 15 U.S.C. § 2310(d).

201.   Volkswagen's Defeat Device Vehicles are a "consumer product," as that term is defined in 15 U.S.C. § 2301(1).

202.   Plaintiffs and Class members are "consumers," as that term is defined in 15 U.S.C. § 2301(3).

203.   Volkswagen is a "warrantor" and "supplier" as those terms are defined in 15 U.S.C. § 2301(4) and (5).

204.   15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied or written warranty.

205.   As described herein, Volkswagen provided Plaintiffs and Class members with "implied warranties" and "written warranties" as those term are defined in 15 U.S.C. § 2301.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

206.   Volkswagen has breached these warranties as described in more detail above. Without limitation, Volkswagen's Defeat Device vehicles are defective, as described above, which resulted in the problems and failures also described above.

207.   By Volkswagen's conduct as described herein, including Volkswagen's knowledge of the defects inherent in the vehicles and its action, and inaction, in the face of the knowledge, Volkswagen has failed to comply with its obligations under its written and implied promises, warranties, and representations.

208.   In its capacity as a warrantor, and by the conduct described herein, any attempts by Volkswagen to limit the implied warranties in a manner that would exclude coverage of the defective software and systems is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective the software and supporting systems is null and void.

209.   All jurisdictional prerequisites have been satisfied.

210.   Plaintiffs and members of the Class are in privity with Volkswagen in that they purchased the software from Volkswagen or its agents.

211.   As a result of Volkswagen's breach of warranties, Plaintiffs and Class members are entitled to revoke their acceptance of the vehicles, obtain damages and equitable relief, and obtain costs pursuant to 15 U.S.C. § 2310.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## COUNT VI:
## UNJUST ENRICHMENT

212.   Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

213.   Plaintiffs bring this count on behalf of themselves and, where applicable, the Class.

214.   Plaintiffs and members of the Class conferred a benefit on Defendants by, inter alia, using (and paying a premium for) its vehicles.

215.   Defendants have retained this benefit, and know of and appreciate this benefit.

216.   Defendants were and continue to be unjustly enriched at the expense of Plaintiffs and Class members.

217.   Defendants should be required to disgorge this unjust enrichment.

## COUNT VII:
## VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO")
## (18 U.S.C. §§ 1961, *et seq.*)

218.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

219.   This Count, which alleges substantive violations of RICO, is asserted against Defendants on behalf of the Class on information and belief for actual damages, treble damages, and equitable relief pursuant to 18 U.S.C. § 1964.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

220.   18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt."

### The Defeat Device Enterprise

221.   On October 4, 2015, *The New York Times* reported Volkswagen's Defeat Device scheme began as early as 2008. "Volkswagen installed software designed to cheat on emissions tests in 2008 after realizing that a new diesel engine, developed at great expense, could not meet pollution standards in the United States and other countries, people with knowledge of the automaker's internal inquiry said.… [r]ather than stop production of the engine and throw out years of work and investment, managers decided to cheat."

222.   As detailed below, upon information and belief, in 2007, at least four individuals took or were appointed to leadership positions at Volkswagen AG, and/or its subsidiaries Audi AG and Porsche AG: Chief Executive Officer Martin Winterkorn ("Winterkorn"); Porsche's head of Engine and Transmission Development Wolfgang Hatz ("Hatz"); Audi's head of Technical Development Ulrich Hackenberg ("Hackenberg"); and Volkswagen's head of Quality Assurance, Frank Tuch ("Tuch") (collectively, "the Individual Members"). These individuals exploited their positions of authority as well as the legitimacy and infrastructure of

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Volkswagen AG, Volkswagen of America, Inc., Porsche AG, Porsche Cars North America, Inc., Audi AG (collectively, "the Volkswagen Corporate Members"), as well as Robert Bosch GmbH ("Bosch"), a German auto component manufacturer that developed the systems used by the criminal enterprise as "defeat devices," to perpetrate fraud against American consumers as well as state and federal regulators for their own personal and professional gain.

223.   When news that Volkswagen AG used "defeat devices" to evade state and federal emissions was made public, each of the Individual Members was immediately identified as being at "at the heart of the affair." Winterkorn promptly resigned. Hackenberg, Tuch, and Hatz, along with Volkswagen's head of research and development, Heinz-Jakob Neusser, and chief of diesel engine development from 2006-2010, Falko Rudolph, were suspended by Volkswagen AG's board of management as a result of their reported involvement in the "defeat device" scandal.

224.   The Individual Members exploited their leadership positions at Volkswagen AG, Volkswagen Group of America, Inc. and/or Audi AG and Porsche AG, as well as the legitimacy and infrastructure of those organizations and Bosch, for personal and professional gain by conducting an enterprise of associated-in-fact entities (the "Defeat Device Enterprise"), comprised of the Individual Members, the Volkswagen Corporate Members, and Bosch

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

(collectively, "the Enterprise Members"), designed to secure the leadership

positions of the Individual Members and increase the sales of Volkswagen-,

Porsche-, and Audi-brand diesel vehicles in the United States and elsewhere by

concealing and/or misrepresenting the vehicles' emission levels.

225.   Hatz, Hackenberg and Tuch, specifically, used their positions of

authority and control at Volkswagen AG subsidiaries—Audi and Porsche—to

infiltrate the Volkswagen Group Board of Management, and exercise control over

the Group to intentionally conceal and suppress material facts concerning the

quality and character of the Defeat Device Vehicles and to evade federal and state

vehicle emissions standards by installing software specifically designed to conceal

its vehicles' emissions of nitrous oxides.

226.   The Volkswagen Corporate Members and/or the Individual Members

compelled and/or condoned the purchase of the "Defeat Devices," comprising in

part engine management systems and software designed by Bosch. Bosch is the

world's largest manufacturer of automotive components and maintains a

continuous and ongoing relationship with the Volkswagen Corporate Members.

Volkswagen Corporate Members and/or the Individual Members used the systems

provided by Bosch as the basis for the Defeat Device, installed them in the Defeat

Device Vehicles, and distributed the Defeat Device Vehicles worldwide, including

but not limited to the 50 United States and the District of Columbia and conducted

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

a campaign of misrepresentations designed to conceal the true emission levels of affected vehicles and conceal their use of defeat devices.

227. The role of each member of the Defeat Device Enterprise is described below.

## Martin Winterkorn – CEO of Volkswagen AG

228. Martin Winterkorn succeeded Bernd Pischetsrieder as CEO of Volkswagen AG in 2007.

229. In 2007, Volkswagen was struggling, specifically in the U.S. market, where Volkswagen AG's performance was described as "disastrous":

> The brand's strategy of wooing customers with premium, uplevel products has not paid off; it is lacking new, interesting, and affordable products in key segments; and its costly production site in Chattanooga, Tennessee, is woefully underutilized.[13]

230. Winterkorn was also facing a challenge to his leadership from auto magnate and long-time Volkswagen executive Ferdinand Piëch, who sought to oust Winterkorn as CEO.[14]

231. In order to secure his leadership position, Winterkorn committed to an unprecedented gambit, described as:

> [a] plan to . . . triple [Volkswagen] sales in the United States in just a decade – setting it on a course to sweep by Toyota to become the world's largest automaker . . . by betting on diesel-powered cars . . .

---

[13] Anton Watts, "VW Drama: Why Piech Wants Winterkorn Out—and What the Future May Hold," *Car and Driver* (Apr. 16, 2015).

[14] *Id.*

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

[and] promising high mileage and low emissions without sacrificing performance.[15]

232.   Winterkorn's promise to make Volkswagen the "world's largest seller of diesel-powered cars" secured his position as CEO and Piëch was ousted from the organization by Volkswagen's Management Board.

233.   However, as is now clear, Winterkorn's promise to the Board to overtake Toyota in the American market through the development of low-emission, consumer-friendly diesel passenger vehicles, while favorable to the investor's bottom line was—absent extraordinary breakthroughs in engineering—a practical impossibility. In short, Winterkorn overpromised.

234.   Prior to 2007, when Winterkorn became CEO, in order to reduce emissions from diesel fuel, Volkswagen's diesel-powered vehicles, were equipped with BlueTEC, a selective catalytic reduction (SCR) system that Volkswagen leased from Daimler AG. To function, BlueTEC requires vehicles to carry an onboard tank of urea crystals in mineralized water, a feature which adds to the initial purchase price of the vehicle, and that must be refilled every 10,000 miles at a cost of around $300, which reduces any cost savings a consumer might realize by using diesel instead of gasoline.

---

[15] Danny Hakim, Aaron Kessler, and Jack Ewing, "As Volkswagen Pushed to Be No. 1, Ambitions Fueled a Scandal," *New York Times* (Sept. 26, 2015).

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

235.   In 2007, the year that Winterkorn took over as CEO, Volkswagen took two major steps to reverse this trend. First, Volkswagen ceased the use of BlueTEC in several of its models in favor of developing its own emissions-reduction technology, which is now known to rely on the defeat devices which are the subject of this suit. Second, executives of Volkswagen AG subsidiaries, Hackenberg, Tuch, and Hatz, were given leadership roles at Volkswagen.

236.   Now, the EPA and CARB have announced that even SCR-equipped 3.0 TDI vehicles rely on the defeat device to cheat on emissions tests while polluting at much higher, unlawful levels during normal operation.

237.   Hatz, Hackenberg, and Tuch, were reportedly hand-picked to play a major role in implementing Winterkorn's plan to make Volkswagen the world's number-one automaker, through the development of consumer-friendly, low-emission diesel vehicles.

238.   By implementing these steps and, in turn, economically benefitting from the Defeat Device Enterprise, Winterkorn delivered on his promise to sell more diesel cars in the U.S. than every other brand combined. However, Winterkorn's misdeeds came at a price and he was forced to resign in September 2015, following allegations that he knew or should have known of the defeat devices installed in Volkswagen vehicles.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

239.   Upon stepping down, Winterkorn asserted he was unaware of any wrongdoing. However, that assertion is belied by newly-disclosed information that Volkswagen engineers discovered the use of the Defeat Device in 2011 and brought it, and the fact that the device was illegal, to the attention of company management. Volkswagen apparently ignored that report and continued their fraudulent and deceptive practices.

240.   In their leadership positions within Volkswagen, the Individual Members ordered the development of and/or personally developed each of the affected diesel-vehicle models that are the subject of this suit. Also in those positions, each Individual Member had access to and authority over the engine development and technical details of each affected Volkswagen vehicle that is the subject of this suit.

### Ulrich Hackenberg

241.   Hackenberg joined Audi AG in 1989 and was put in charge of Audi Concept Definition. Later, he took over technical project management for Audi's entire product range, including the Audi A3, A6, and A8, the TDI versions of which are now among the Defeat Device Vehicles.[16]

---

[16] Audi, "Board of Management," http://www.audiusa.com/newsroom/corporate /audi-ag-board-of-management/ulrich-hackenberg (last accessed Sept 26, 2015) ("In 1985 Prof. Dr. Hackenberg joined AUDI AG, where in 1989 he was put in charge of Concept Definition and later took over the technical project

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

242.   On February 1, 2007, Hackenberg was appointed as a Member of Volkswagen's Brand Board of Development, where he was responsible for the technical development of all the Volkswagen Group's brands.[17] Under his leadership, three new models were developed: the Golf, the Polo, and the Passat, two of which are Defeat Device Vehicles.

243.   On July 1, 2013, Hackenberg was appointed to the Board of Management of Audi AG, and given the responsibility to head up Audi AG's Technical Development.

244.   As head of technical development at Audi AG, Hackenberg spearheaded the development of Audi's TDI "CleanDiesel" engines. As he explained in a press release, his strategy for Audi's technical development included the following:

> [P]ushing forward with development in . . . our TDI engines in the USA – our clean diesel offensive is bearing substantial fruit. In China, too, we are already introducing the first clean diesel models and watching developments there very closely. We also expect a great deal from g-tron technology, the most sustainable type of gas drive.[18]

245.   In his role as head of technical development at Audi AG, Hackenberg

---

management of the entire product range. This included the models Audi 80, A3, A4, A6, A8, TT and A2.").

[17] *Id.*

[18] Audi AG, "Gentlemen Start Your Engines," http://audi-encounter.com/magazine/technology/01-2015/126-gentlemen-start-your-engines (2014).

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

had extensive knowledge of the technical details of the TDI "CleanDiesel" models that he developed, and was reportedly suspended after reports that he had knowledge that the Defeat Device Vehicles used Defeat Devices to evade federal and state vehicle emissions standards.

## Wolfgang Hatz

246.   Wolfgang Hatz joined Volkswagen in 2001 and at various times directed engine development for the Porsche, Audi, and Volkswagen brands.

247.   In his role as the head of Engines and Transmissions Development, Hatz supervised the development of the engines and transmissions for the Defeat Device Vehicles and had knowledge of the technical details of each those vehicles.

248.   Hatz was reportedly suspended from his position in September 2015 after reports that he had knowledge that the affected Audi and Volkswagen vehicles used Defeat Devices to evade federal and state vehicle emissions standards.

## Frank Tuch

249.   In 2002, before it was acquired by Volkswagen, Frank Tuch ("Tuch") was appointed as the head of quality control at Porsche. During his tenure there, Tuch helped to raise Porsche to #1 in the J.D. Power U.S. Quality Rankings, defying expectations that American consumers could not be attracted to its high-

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

maintenance vehicles.[19] Tuch left the company in 2009 to work at Lotus, a British car maker, but was brought back into the Volkswagen fold in 2010 by newly-minted CEO Winterkorn.[20]

250.   Winterkorn made clear that Tuch's appointment as head of quality control across the group's brands was directly related to Winterkorn's gambit to accelerate Volkswagen sales in the United States, and expected Tuch to improve Volkswagen's and Audi's flagging rankings in U.S. Quality Rankings which had "hamper[ed] VW group's efforts to improve sales in the key U.S. market."[21] Winterkorn pledged that Tuch will "[b]ring us forward in the USA."[22]

251.   Volkswagen's in-house magazine reported that Tuch and Winterkorn worked together extremely closely to honor that pledge, meeting "every Monday to discuss quality issues, often taking test drives in vehicles manufactured by the company." [23]

252.   In his role as head of quality assurance, Tuch was also intimately

---

[19] Jack Ewing, "Volkswagen Suspends 5th Executive in Emissions Scandal," The New York Times (Oct 20, 2015).

[20] Volkswagen, "Rothenpieler to head Volkswagen Sachsen, Tuch takes charge of quality assurance" (Aug. 6, 2010).

[21] Paul McVeigh, "VW says new quality chief to start Sept. 1," Autonotive New Europe, Aug. 9, 2010.

[22] Willima Boston, "Volkswagen Suspends Quality-Control Chief," The Wall Street Journal, Oct. 20, 2015.

[23] Jack Ewing, "Volkswagen Suspends 5th Executive in Emissions Scandal," The New York Times (Oct 20, 2015).

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

familiar with Volkswagen, Audi, and Porsche brand engines and transmissions.
Primary among his duties was "product development," specifically, "the
development and production of components such as engines, transmissions, seats
and suspension parts" for small, compact, midsize, and full size product lines,
including all the Defeat Device Vehicles.[24]

253.   Tuch also oversaw, as a component of the quality assurance group,
"36 laboratory locations throughout the world in terms of training and auditing and
also finds staff to fill laboratory manager positions,"[25] including Volkswagen's
laboratories in the United States, which were primarily responsible for emissions
testing of the Defeat Device Vehicles.

254.   Ultimately, Tuch was able to fulfil Winterkorn's expectation that he
increase Audi's and Volkswagen's J.D. Power U.S. quality rankings as he had at
Porsche.[26] However, soon after news broke regarding the present emissions
cheating scandal, on October 20, 2015, Tuch became "the fifth senior executive to

---

[24] Volkswagen, Quality Assurance, http://www.volkswagen-karriere.de/en/what_we_do/corporate_divisions/quality_assurance.html (2015).

[25] Volkswagen, Quality Assurance, http://www.volkswagen-karriere.de/en/what_we_do/corporate_divisions/quality_assurance.html (2015).

[26] *See, e.g.,* AudiUSA, "Audi ranked best in serve-repair satisfaction, new Power study says," audi-scores-high-in-j-d--power-customer-satisfaction-survey (March 17, 2014); Chris Woodyard, "Kia, Hyundai Rise, Japanese fall in J.D. Power quality study, USA Today, http://www.usatoday.com/story/money/cars/2015/06/17/jd-power-releases-study-results/28865109/ (June 17, 2015).

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

be put on leave in connection with [the] scandal" [27] due to suspicions that he "may

have been aware of the defeat device and didn't report it,"[28] which were raised

after external investigators found "incriminating correspondence."[29]

## Allegations Common to the Individual Members

255.    Upon information and belief, in their leadership roles at Volkswagen,

the Individual Members used Volkswagen AG and its subsidiaries including

Volkswagen of America, Inc., Volkswagen's resources, as well as supplier Bosch,

to orchestrate a scheme to fulfill Winterkorn's promise to the Board to triple

Volkswagen's sales in the United States through the sale of low-emission diesel

vehicles by ordering, developing, and/or installing defeat devices in the Defeat

Device Vehicles and, through a pattern of racketeering activity, misrepresenting

and/or concealing the true emissions levels of those vehicles.

256.    In addition to the pattern of racketeering detailed herein, the

Individual Members exploited Volkswagen's, its subsidiaries', and Bosch's

resources, including employees and engineers, in order to further the cover-up. For

---

[27] William Boston, "Volkswagen Suspends Quality-Control Chief," The Wall
    Street Journal, Oct. 20, 2015.
[28] Steven Goodstein, "Volkswagen AG Puts Frank Tuch on Leave," Journal
    Transcript (Oct. 21, 2015),
    http://www.journaltranscript.com/2015/10/volkswagen-ag-adrotcmktsvlkay-puts-
    frank-tuch-on-leave/
[29] Christian Hetzer, "VW suspends quality chief in emissions cheat probe, reports
    say," (Oct. 21, 2015), http://europe.autonews.com/article/20151021/ANE/
    151029979/vw-suspends-quality-chief-in-emissions-cheat-probe-reports-say

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

example, according to reports from "[e]missions testers at the company's site in Westlake Village, California [which] evaluated all [Volkswagen] cars," VW and Audi executives orchestrated a cover-up from abroad:

> If any vehicle failed to meet emissions targets, a team of engineers from Volkswagen headquarters [in Wolfsburg, Germany] or luxury brand Audi's base in Ingolstadt [Germany] was flown in…. After the group had tinkered with the vehicle for about a week, the car would then pass the test. VW had no engineers in the U.S. able to create the mechanism that cheated on the test or who could fix emissions problems, according to two other people.[30]

257.   In other words, any vehicles that failed emissions targets received special treatment—that is, was fitted with a Defeat Device—and then the vehicle would pass the emissions test.

258.   In their leadership roles at Volkswagen AG and its subsidiaries, the Individual Members used Volkswagen's infrastructure to distribute Defeat Device Vehicles to the United States and elsewhere.

259.   In their leadership roles at Volkswagen AG and its subsidiaries, the Individual Members used Volkswagen's infrastructure to orchestrate, and/or approve, a marketing campaign designed to misrepresent the emission levels of affected vehicles and defraud consumers.

---

[30] Alex Webb and David Welch, "Volkswagen Said to Manage Faked Test Results From Germany," (Sept. 25, 2015).

Keller Rohrback L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

260.    Through the Individual Members' misuse of Volkswagen resources and infrastructure, they achieved considerable personal and financial success.

### Allegations Against the Volkswagen Corporate Members

261.    The Volkswagen Corporate Members developed, conducted, and approved a marketing campaign designed to misrepresent the emission levels of affected vehicles and to defraud consumers based upon the racketeering activity described below.

262.    The Volkswagen Corporate Members collaborated and colluded with each other with and the Individual Members to conceal and suppress material facts concerning the quality and character of the affected vehicles and to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutants.

### Allegations Against Robert Bosch GmbH ("Bosch")

263.    Bosch is the world's largest manufacturer of automotive components.

264.    On information and belief, Bosch developed the engine and emissions control systems and software that provided the basis for the Defeat Devices, and sold them to Volkswagen.

265.    On information and belief, Bosch was aware that the use of "test," "dynometer," or "temperature conditioning" operation modes in engine management software as Defeat Devices to evade emissions requirements is

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

illegal, but nevertheless sold the systems and software to Volkswagen AG.

266.   In 2007, when Volkswagen was developing the TDI engines that are the subject of the present suit using Bosch engine management software, Bosch issued a letter to the Volkswagen AG warning them that the use of "test" or "dynometer" modes included in the software during normal operation of a vehicle was illegal.

267.   Bosch was reckless in not being aware of Winterkorn's promised ambitions to the Board to overtake Toyota's sales in the American market and to become the largest auto manufacturer in the world, through the sale of low-emission diesel passenger vehicles.

268.   Bosch was reckless in not being aware that the illegal use of its software as a Defeat Device would help to achieve Winterkorn's promise.

269.   Bosch was or should have been further aware that sales of Volkswagen vehicles that had Defeat Devices installed were increasing at an unprecedented rate, as indicated by the below graph from *The Economist*:

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



270.   Based upon the above-alleged information Bosch, as one of the largest and most successful component manufacturers in the world, knew or should have known, or was reckless in not knowing, that engine management systems and software were being used as part of Defeat Devices illegally used in Volkswagen vehicles sold in the United States and around the world.

## ClearlyBetterDiesel.Org Partnership

271.   By the end of 2012, Winterkorn and Volkswagen's strategy of focusing on the sale of passenger-diesel vehicles had nearly doubled the sales of "clean" diesel vehicles in the United States, but diesels still accounted for less than three percent of new car sales.

272.   In response, Volkswagen, Audi, Porsche, Bosch, BMW, Daimler, and the German Association of the Automotive Industry, formed the "Clean Diesel.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Clearly Better" Partnership (the "ClearlyBetterDiesel Partnership") to double down on Volkswagen's strategy of marketing "Clean Diesel" vehicles to American consumers.

273.   The Partnership unveiled its campaign to increase the total number of clean diesel sales in the United States at the 2013 North American International Auto show in Detroit, with the launch of its website: ClearlyBetterDiesel.Org, the public face of the ClearlyBetterDiesel Partnership.

274.   That website was part of Defendants' plan to market and sell diesel passenger vehicles to consumers in the United States, including Plaintiffs. Defendants therefore used the ClearlyBetterDiesel Partnership, which was and is a distinct entity from Defendants, to conduct the pattern of racketeering activity described in this Complaint.

275.   The ClearlyBetterDiesel Partnership, through its website, engaged in interstate commerce, and its activities affected interstate commerce, because, inter alia, constituted a part of a national marketing scheme designed to increase sales of Defendants' diesel vehicles.

276.   The website at www.ClearlyBetterDiesel.org has been largely removed from the Internet since September 2015, but archived versions of the website show Defendants' logos on the bottom, providing that "our partners include" Volkswagen and Audi:

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



277.    In addition, at least one page of that website is still publicly available:

http://www.clearlybetterdiesel.org/info.html ("Info Page") (last visited Oct. 26,

2015).

278.    That Info Page also includes misleading statements about the

performance and emissions characteristics of Defendants' "clean" diesel vehicles.

For example, the website states that "Clean Diesels have such low (classical)

pollutant emissions that they meet the strict-limit values in all 50 federal states,

including California[,]" and that "[m]odern diesel power trains have been

developed to reach the status of high-performance, more fuel-efficient,

sophisticated and, above all, cleaner engines than their gasoline counterparts. As a

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

result of the emissions legislation, exhaust emissions from diesel engines have been reduced by 96 to 98 percent since the start of the nineties."

279.   The website also links to the following document, which appears to misrepresent the NOx emissions of Defendants' vehicles:



280.   In sum, the ClearlyBetterDiesel Partnership was part and parcel of Defendants' scheme to defraud Plaintiffs and the class by marketing and selling supposedly "clean" diesel vehicles. To perpetuate that scheme, Defendants' committed multiple, related acts of mail fraud, wire fraud, and other racketeering activities through their association with the ClearlyBetterDiesel Partnership.

281.   Therefore, although each member of the above-alleged 'Defeat Device Enterprise' furthered the enterprise's scheme through the misuse of the legitimacy and resources of the ClearlyBetterDiesel Partnership, the Partnership itself, each members of the Partnership (Volkswagen, Audi, Porsche, Bosch,

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

BMW, Daimler, and the German Association of the Automotive Industry) and the

actions taken by and on behalf of the Partnership (collectively "the

ClearlyBetterDiesel Enterprise") constitute an RICO enterprise separate and

distinct from the 'Defeat Device Enterprise' sufficient to sustain an independent

1962(c) claim against Defendants.

### Enterprise Allegations

282.   The Individual Members, the Volkswagen Corporate Members,

Bosch, the ClearlyBetterDiesel Partnership, and each member of the

ClearlyBetterDiesel Partnerships are all "persons" within the meaning of 18 U.S.C.

§ 1961(3).

283.   The Defeat Device Enterprise and/or the ClearlyBetterDiesel

Enterprise engaged in, and affected, interstate and foreign commerce, and is an

association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(3) and

consists of "persons" associated together for the common purpose of employing

the multiple, deceptive, abusive, illegal, and/or fraudulent acts described herein.

284.   The Defeat Device Enterprise was formed in or about 2007 and

continues to the present day.

285.   The ClearlyBetterDiesel Enterprise was formed in or about 2012 and

continues to the present day.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

286.   On information and belief, the Individual Members and the Volkswagen Corporate Members, violated 18 U.S.C. § 1962(c) by participating in or conducting the affairs of the Defeat Device Enterprise and/or engaging in a pattern of repeatedly defrauding consumers.

287.   In addition, Bosch violated 18 U.S.C. § 1962(c) by participating in or conducting the affairs of the Defect Device Enterprise through a pattern that it knew or should have known defrauded consumers.

288.   The Defeat Device Enterprise and/or the ClearlyBetterDiesel Enterprise undertook a fraudulent scheme to sell Defect Device Vehicles based upon the false and misleading misrepresentations and omissions set forth herein.

289.   In furtherance of the scheme, the Volkswagen Corporate Members and/or Individual Members engaged in thousands of acts of mail fraud and wire fraud, each of which constitute "racketeering activity," as that term is defined in 18 U.S.C. § 1961(1), as will be further detailed below.

290.   The Defeat Device Enterprise and/or the ClearlyBetterDiesel Enterprise are ongoing organizations with ascertainable structures and a framework for making and carrying out decisions, that functions as a continuing unit with established duties, and that is separate and distinct from the pattern of racketeering activity in which Enterprise members have engaged and are engaging. Each member of the Enterprises performed a role in furtherance of the scheme consistent

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

with its structure. The Enterprises were controlled by the Volkswagen Corporate Members and/or the Individual Members who developed the Defeat Device scheme and developed the cars and engines that would put it into place. Upon direction from the Volkswagen Corporate Members and/or Individual Members, Bosch knew was reckless in not knowing the illegal purpose for which the defeat devices software it developed and supplied to the Volkswagen Corporate Members was being used, and the Volkswagen Corporate Members distributed the vehicles alongside a marketing campaign, in part facilitated and carried out by the ClearlyBetterDiesel Partnership, designed to misrepresent the Defeat Device Vehicles' emission levels and defraud consumers.

291.   The Enterprises also exist for the legitimate purpose of developing, manufacturing, and selling automobiles and operates within a framework that includes the sale of other automobiles not affected by fraud.

292.   Alternatively, the Enterprises were formed solely for the purpose of carrying out the pattern of racketeering acts described herein.

293.   The Enterprises were and are used by the Individual Members and/or the Volkswagen Corporate Members to effectuate a pattern of racketeering activity. All members of the Defeat Device Enterprise and/or the ClearlyBetterDiesel Enterprise played a part in a fraudulent scheme to sell affected

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

vehicles through the use of false or misleading statements related to the power, fuel efficiency, and emissions levels of the Defeat Device Vehicles.

294.   The members of the Enterprises shared a common purpose to develop and sell vehicles, of which certain models included a functioning Defeat Device.

295.   On information and belief, the Volkswagen Corporate Members and Individual Members of the Enterprise also shared a common purpose which amounted to fraud: to misrepresent the emission levels, fuel efficiency, performance, and power of affected Volkswagen-, Audi-, and Porsche-branded vehicles and/or to conceal information regarding the use of Defeat Devices in the Volkswagen Defeat Device Vehicles to evade state and federal emission regulations. Bosch knew or was reckless in not knowing that this was occurring and that Bosch software was being used to achieve it.

296.   Each member of the Enterprises benefits from the common purpose. For the Volkswagen Corporate Members, the purpose was to avoid the additional costs associated with developing and installing low-emissions diesel technology that would also be attractive to consumers, to avoid the expense of developing engines that could perform as desired while still passing emissions tests, and to sell and lease more vehicles to consumers based upon false representations of the Defeat Device Vehicles' performance and emissions levels. Succinctly put, the common purpose was to profit from the myth of the "holy grail" of high

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

performance, efficient, low emissions vehicles. For the Individual Members, the purpose of the scheme was to further their own professional and pecuniary interests through misuse of the Corporate Members' resources. For Bosch, the purpose was to increase the sales of components to Volkswagen and thus realize monetary profit from the scheme. For ClearlyBetterDiesel Partnership members, the purpose was to increase the sale of diesel vehicles in the United States.

297.   The Defeat Device Enterprise and/or the ClearlyBetterDiesel Enterprise are separate and distinct from the pattern of racketeering activity. The Enterprises are ongoing organizations or groups and existed to advance the interests of the individual entities that comprise its membership, as noted above.

298.   The Defeat Device Enterprise and/or the ClearlyBetterDiesel Enterprise, whose activities affected interstate and foreign commerce, are an association in fact of individuals and corporate entities within the meaning of 18 U.S.C. § 1961(4) and consists of persons associated together for the above described common purposes.

299.   Volkswagen AG and its subsidiaries, Volkswagen Group of America, Inc., Porsche AG, Porsche Cars North America, Inc., and Audi AG; Bosch; the ClearlyBetterDiesel Partnership, the ClearlyBetterDiesel Partnership Members, Martin Winterkorn, Ulrich Hackenberg, Frank Tuch, and Wolfgang Hatz are individuals or entities separate and distinct from one another and from the

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Enterprise. All of the Enterprise members are individuals or independent legal entities with the authority to act independently of the Enterprise and the other Enterprise members.

300.   The Individual Members, the Volkswagen Corporate Members, and Bosch, and their respective officers and employees, together, knowingly or recklessly, developed the Defeat Devices and the Defeat Device Vehicles and/or the operative technology in the Defect Device Vehicles.

301.   The Individual Members, the Volkswagen Corporate Members, and their respective officers and employees developed the false, misleading and/or deceptive advertisements described above.

## Pattern of Racketeering Activity

302.   As set forth above, the Corporate Members and the Individual Members conducted and participated in the affairs of the Enterprise.

303.   In furtherance of the scheme, the Volkswagen Corporate Members engaged in thousands, or more, acts of mail fraud and wire fraud, each of which constitute "racketeering activity," as the term is defined in 18 U.S.C. § 1961(1).

304.   Specifically, the pattern consisted of numerous and repeated violations of the federal mail and wire fraud statutes—namely 18 U.S.C. §§ 1341 and 1343—that prohibit the use of any interstate or foreign mail or wire facility for the purpose of executing a scheme to defraud.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

305.   The Volkswagen Corporate Members and/or Individual Members, with the assistance and collaboration of the other persons associated in fact with the Enterprise, devised and employed a fraudulent scheme to suppress and conceal the true emissions levels of the affected vehicles and by use of the mails, telephone and internet transmitted, or caused to be transmitted, by means of wire communication traveling in interstate or foreign commerce, writing(s) and/or signal(s), including but not limited to Volkswagen's, Porsche's, and Audi's websites, Service Bulletins to dealers, vehicle owners' manuals, press releases, advertisements, communications with federal and state regulators, and communications with other members of the enterprise, for the purpose of executing that scheme or artifice to defraud, in violation of 18 U.S.C. §§ 1341 and 1343. Defendants' pattern of conduct is exemplified below.

306.   In or about April, 2015, Volkswagen sent letters to owners of Defeat Device Vehicles instructing them to take their cars to a dealer in order to install a software update that would alter their vehicles' tailpipe emissions so as to "optimize . . . operating efficiency." In reality, the software update was intended only to continue to evade state emissions tests and the letter was intended to (and did) perpetrate fraud against consumers and government regulators. A copy of the letter is attached hereto as Exhibit E.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

307.   In December, 2014, in response to concerns raised by the California Air Resources Board and the EPA, Volkswagen was permitted to issue recall letters for certain 2-liter diesel 2010-2014 models. The letters indicated that the owners of certain Defeat Device Vehicles needed to return their cars in order to install a software update that would fix an issue with a malfunctioning indicator light. Specifically, it indicated that "if the [light] illuminates for any reason, your vehicle will not pass an . . . emission inspection."[31] In reality, the update was intended only to evade state emission tests and the letter was intended to perpetrate fraud against consumers and government regulators.

308.   As detailed above, Volkswagen has continuously and, as recently as September 17, 2015, in television, internet and print advertisements, falsely represented that its Defeat Device Vehicles were "clean diesel" vehicles and emitted less greenhouse gas than other models, when in fact they emitted up to 40 times more greenhouse gases than legally permitted by state a federal regulations.

309.   In addition to the foregoing, each download or view of one of the advertisements described above constituted a separate offense.

310.   Continually, and as recently as September 17, 2015, Volkswagen transmitted fraudulent reports to the EPA indicating that their Defeat Device

---

[31] Mike Blake, "Exclusive: VW recall letters in April warned of an emissions glitch," *Reuters Business* (Sept. 23, 2015).

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Vehicles met emissions targets as required by law,[32] when in fact they emit 10 to 40 times more greenhouse gases than permitted by state and federal regulation.

### Plaintiffs' Injuries and Damages

311.   Plaintiffs and the Class were damaged and injured in their business and property by reason of the Defeat Device Enterprise's conduct in at least the following ways:

a.      Plaintiffs and Class members who purchased or leased Defeat Device Vehicles were fraudulently induced into making those transactions and/or paying more than they otherwise would have had the true emissions and performance information of the Defeat Device Vehicles been revealed.

b.      The value of the vehicles Plaintiffs and Class members purchased has been reduced, and if they can resell their vehicles at all, the resale value has decreased dramatically.

312.   By reason of the foregoing, Volkswagen, has unlawfully, knowingly, and willfully conducted and participated directly or indirectly in the foregoing Defeat Device Enterprise through a pattern of racketeering activity in violation or attempted violation of 18 U.S.C. § 1962(c).

---

[32] Alex Webb and David Welch, "Volkswagen Said to Manage Faked Test Results From Germany," (Sept. 25, 2015.)

Keller Rohrback L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

313.   These violations of 18 U.S.C. § 1962(c) by Volkswagen have directly and proximately caused Plaintiffs' and Class members' injuries and damages as set forth above.

314.   Plaintiffs and Class members are entitled to bring this action for three times their actual damages, as well as punitive damages, equitable relief, and their costs and reasonable attorneys' fees, pursuant to 18 U.S.C. § 1964(c).

## B.    State-Specific Claims

### COUNT VIII:
### VIOLATION OF MICHIGAN CONSUMER PROTECTION ACT
### (Mich. Comp. Laws §§ 445.901, *et seq.*)

315.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

316.   Plaintiffs bring this Count on behalf of the Michigan members of the Class.

317.   The Michigan Consumer Protection Act ("MCPA" or "Act") protects consumers from "unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws § 445.903.

318.   Plaintiffs and the Class members are persons under the Act. *Id.* § 445.902.

319.   Defendants engage in trade or commerce as defined by the Act by designing, marketing, and selling diesel vehicles in Michigan and elsewhere.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

320.    As described herein, in designing, marketing, and selling Defeat Device Vehicles, Defendants engaged in an unlawful method, act, or practice in trade or commerce, namely the intentional deception of regulators and the public regarding the true emissions characteristics of their "clean" diesel engines.

321.    Defendants' unlawful acts were not authorized by any law or regulation; no law permits designing, manufacturing, and selling or leasing vehicles with "defeat devices" intentionally engineered to cheat regulatory requirements.

322.    As a result of Defendants' unlawful conduct, Plaintiffs and Class members have suffered losses: they paid a premium for vehicles that do not perform as advertised, and those vehicles are now worth substantially less due to the recall.

## COUNT IX:
## VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT
### (Cal. Civ. Code §§ 1750, *et seq.*)

323.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

324.    Plaintiffs bring this Count on behalf of California members of the Class.

325.    California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, proscribes "unfair methods of competition and unfair or

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

326.   The Defeat Device Vehicles are "goods" as defined in Cal. Civ. Code § 1761(a).

327.   Plaintiffs and the other California members of the Class are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiffs, the other California members of the Class, and Volkswagen are "persons" as defined in Cal. Civ. Code § 1761(c).

328.   As alleged above, Volkswagen made numerous representations concerning the benefits, efficiency, performance, and safety features of CleanDiesel engine systems that were misleading.

329.   In purchasing or leasing the Defeat Device Vehicles, Plaintiffs and the other Class members were deceived by Volkswagen's failure to disclose that the Defeat Device Vehicles were equipped with defective CleanDiesel engine systems that, but for the use of defeat devices to cheat emissions testing, failed EPA and California emissions standards.

330.   Volkswagen's conduct, as described hereinabove, was and is in violation of the CLRA. Volkswagen's conduct violates at least the following enumerated CLRA provisions:

(a)   Cal. Civ. Code § 1770(a)(5): Representing that goods have characteristics, uses, and benefits which they do not have;

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

(b)     Cal. Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another;

(c)     Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised; and

(d)     Cal. Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

331.    Plaintiffs and the other California members of the Class have suffered injury in fact and actual damages resulting from Volkswagen's material omissions and misrepresentations because they paid an inflated purchase or lease price for the Defeat Device Vehicles and because they stand to pay additional fuel costs if and when their Defeat Device Vehicles are made to comply with emissions standards.

332.    Volkswagen knew, should have known, or was reckless in not knowing of the defective design and/or manufacture of the CleanDiesel engine systems, and that the Defeat Device Vehicles were not suitable for their intended use.

333.    The facts concealed and omitted by Volkswagen to Plaintiffs and the other California members of the Class are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Defeat Device Vehicles or pay a lower price. Had Plaintiffs and the other California members of the Class known about the defective nature of the Defeat Device Vehicles, they would not have purchased or leased the Defeat Device Vehicles or would not have paid the prices they paid.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

334.    Plaintiffs and the other California members of the Class' injuries were proximately caused by Volkswagen's fraudulent and deceptive business practices.

## COUNT X:
## VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW
### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

335.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

336.    Plaintiffs bring this Count on behalf of the California members of the Class.

337.    California Bus. & Prof. Code § 17500 states:

It is unlawful for any corporation...with intent directly or indirectly to dispose of real or personal property...to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, ... or in any other manner or means whatever, including over the Internet, any statement ... which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

338.    Volkswagen caused to be made or disseminated throughout California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Volkswagen, to be untrue and misleading to consumers, including Plaintiffs and the other Class members.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

339.   Volkswagen has violated § 17500 because the misrepresentations and omissions regarding the safety, reliability, and functionality of Defeat Device Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

340.   Plaintiffs and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Volkswagen's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Defeat Device Vehicles, Plaintiffs and the other Class members relied on the misrepresentations and/or omissions of Volkswagen with respect to the safety, performance and reliability of the Defeat Device Vehicles. Volkswagen's representations turned out not to be true because the Defeat Device Vehicles are distributed with faulty and defective CleanDiesel engine systems, rendering certain safety and emissions functions inoperative. Had Plaintiffs and the other Class members known this, they would not have purchased or leased their Defeat Device Vehicles and/or paid as much for them. Accordingly, Plaintiffs and the other Class members overpaid for their Defeat Device Vehicles and did not receive the benefit of their bargain.

341.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Volkswagen's business. Volkswagen's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

342.   Plaintiffs, individually and on behalf of the other Class members, request that this Court enter such orders or judgments as may be necessary to enjoin Volkswagen from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and the other Class members any money Volkswagen acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## COUNT XI:
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Cal. Com. Code § 2314)

343.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

344.   Plaintiffs bring this Count on behalf of the California members of the Class.

345.   Volkswagen is and was at all relevant times a merchant with respect to motor vehicles under Cal. Com. Code § 2104.

346.   A warranty that the Defeat Device Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to Cal. Com. Code § 2314.

347.   These Defeat Device Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Defeat Device Vehicles are inherently

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

defective in that they do not comply with federal and state emissions standards, rendering certain safety and emissions functions inoperative; and the CleanDiesel engine system was not adequately designed, manufactured, and tested.

348.   Volkswagen was provided notice of these issues by the investigations of the EPA and individual state regulators.

349.   Plaintiffs and the other Class members have had sufficient direct dealings with either Volkswagen or their agents (dealerships) to establish privity of contract between Volkswagen on one hand and Plaintiffs and the other Class members on the other. Notwithstanding this, privity is not required in this case because Plaintiffs and the other Class members are intended third-party beneficiaries of contracts between Volkswagen and its dealers; specifically, they are the intended beneficiaries of Volkswagen's implied warranties. The dealers were not intended to be the ultimate consumers of the Defeat Device Vehicles and have no rights under the warranty agreements provided with the Defeat Device Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because Plaintiffs' and the other Class members' Defeat Device Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

350.   As a direct and proximate result of Volkswagen's breach of the warranties of merchantability, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

## COUNT XII:
## FRAUD BY CONCEALMENT
### (California Law)

351.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

352.   This claim is brought on behalf of California members of the Class.

353.   Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Defeat Device Vehicles. As alleged in this complaint, notwithstanding references in the very model names of the subject vehicles as "CleanDiesel," or to their engines as "TDI CleanDiesel" engines, Volkswagen engaged in a secret deception to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog. The software installed on the vehicles at issue was designed nefariously to kick in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings. Reportedly, Volkswagen's deliberate, secret

Keller Rohrback L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

deception resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

354.   Plaintiffs and California members of the Class reasonably relied upon Volkswagen's false representations. They had no way of knowing that Volkswagen's representations were false and gravely misleading. As alleged herein, Volkswagen employed extremely sophisticated methods of deception. Plaintiffs and California members of the Class did not, and could not, unravel Volkswagen's deception on their own.

355.   Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales about the trust that Plaintiffs and California members of the Class placed in its representations. As one customer, Priya Shah, put it in a quotation cited by the Los Angeles Times in a September 15, 2015 article, "It's just a blatant disregard and intentional manipulation of the system. That's just a whole other level of not only lying to the government, but also lying to your consumer. People buy diesel cars from Volkswagen because they feel they are clean diesel cars." As Ms. Shah put it, "I don't want to be spewing noxious gases into the environment."

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

356.   Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its deception to regulators or consumers, including Plaintiffs and California members of the Class. Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that its vehicles likewise comply with applicable law and regulations. Volkswagen's false representations were material to consumers, both because they concerned the quality of the Defeat Device Vehicles, including their compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Volkswagen well knew, its customers, including Plaintiffs and California members of the Class, highly valued that the vehicles they were purchasing or leasing were clean diesel cars, and they paid accordingly.

357.   Volkswagen had a duty to disclose the emissions deception it engaged in with respect to the Defeat Device Vehicles because knowledge of the deception and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to the implementation and maintenance of its deception, and because Volkswagen knew the facts were not known to or

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

reasonably discoverable by Plaintiffs or California members of the Class.

Volkswagen also had a duty to disclose because it made general affirmative

representations about the qualities of its vehicles with respect to emissions

standards, starting with references to them as clean diesel cars, or cars with clean

diesel engines, which were misleading, deceptive, and incomplete without the

disclosure of the additional facts set forth above regarding its emissions deception,

the actual emissions of its vehicles, its actual philosophy with respect to

compliance with federal and state clean air law and emissions regulations, and its

actual practices with respect to the vehicles at issue.

358.   Having volunteered to provide information to Plaintiffs, Volkswagen

had the duty to disclose not just the partial truth, but the entire truth. These omitted

and concealed facts were material because they directly impact the value of the

Defeat Device Vehicles purchased or leased by Plaintiffs and California members

of the Class.

359.   Whether a manufacturer's products comply with federal and state

clean air law and emissions regulations, and whether that manufacturer tells the

truth with respect to such compliance or non-compliance, are material concerns to

a consumer, including with respect to the emissions certifications testing their

vehicles must pass. Volkswagen represented to Plaintiffs and California members

of the Class that they were purchasing clean diesel vehicles, and certification

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

360.   Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and California members of the Class.

361.   On information and belief, Volkswagen has still not made full and adequate disclosures, particularly as to past conduct, and continues to defraud Plaintiffs and California members of the Class by concealing material information regarding both the emissions qualities of the Defeat Device Vehicles and its emissions deception.

362.   Plaintiffs and California members of the Class were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and California members of the Class' actions were justified.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or California members of the Class.

363.   Because of the concealment and/or suppression of the facts, Plaintiffs and California members of the Class have sustained damage because they own vehicles that have diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of millions of Volkswagen-, Porsche-, and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies. Had Plaintiffs and California members of the Class been aware of Volkswagen's emissions deception with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiffs and California members of the Class who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

364.   The value of Plaintiffs' and California members of the Class' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions deception, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and California members of the Class' vehicles and made any reasonable consumer reluctant to purchase any of the Defeat Device

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

365. Accordingly, Volkswagen is liable to Plaintiffs and California members of the Class for damages in an amount to be proven at trial.

366. Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs and California members of the Class' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen. Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

367. Plaintiffs plead this count pursuant to the law of California on behalf of all California members of the Class.

## COUNT XIII:
## VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (Cal. Civ. Code §§ 1791.1 & 1792)

368. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

369. Plaintiffs bring this Count on behalf of the California members of the Class.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

370.   Plaintiffs and the other Class members who purchased or leased the Defeat Device Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

371.   The Defeat Device Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

372.   Volkswagen is a "manufacturer" of the Defeat Device Vehicles within the meaning of Cal. Civ. Code § 1791(j).

373.   Volkswagen impliedly warranted to Plaintiffs and the other Class members that its Defeat Device Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792, however, the Defeat Device Vehicles do not have the quality that a buyer would reasonably expect.

374.   Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(a)   Pass without objection in the trade under the contract description.

(b)   Are fit for the ordinary purposes for which such goods are used.

(c)   Are adequately contained, packaged, and labeled.

(d)   Conform to the promises or affirmations of fact made on the container or label.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

375.   The Defeat Device Vehicles would not pass without objection in the automotive trade because they do not pass EPA and state law emissions regulations.

376.   Because the Defeat Device falsely caused Defeat Device Vehicles to obtain EPA certification and pass emissions tests when in fact they emit up to 40 times the permitted level of NOx, they are not fit for ordinary purposes.

377.   The Defeat Device Vehicles are not adequately labeled because the labeling fails to disclose the Defeat Device that causes certain emissions systems of the Defeat Device Vehicles to become fully operational only during emissions testing.

378.   Volkswagen breached the implied warranty of merchantability by manufacturing and selling Defeat Device Vehicles containing the Defeat Device. Furthermore, Volkswagen's fraudulent use of the Defeat Device has caused Plaintiffs and the other Class members to not receive the benefit of their bargain and has caused Defeat Device Vehicles to depreciate in value.

379.   As a direct and proximate result of Volkswagen's breach of the implied warranty of merchantability, Plaintiffs and the other Class members received goods whose dangerous and dysfunctional condition substantially impairs their value to Plaintiffs and the other Class members. Plaintiffs and the other Class members have been damaged as a result of the diminished value of Volkswagen's

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

products, the products' malfunctioning, and the nonuse of their Defeat Device Vehicles.

380.   Pursuant to Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiffs and the other Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Defeat Device Vehicles, or the overpayment or diminution in value of their Defeat Device Vehicles.

381.   Pursuant to Cal. Civ. Code § 1794, Plaintiffs and the other Class members are entitled to costs and attorneys' fees.

## COUNT XIV:
## VIOLATION OF NEBRASKA CONSUMER PROTECTION ACT
### (Neb. Rev. Stat. §§ 59-1601, *et seq.*)

382.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

383.   Plaintiffs bring this Count on behalf of the Nebraska members of the Class.

384.   The Nebraska Consumer Protection Act ("Nebraska CPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Neb. Rev. Stat. § 59-1602.

385.   Volkswagen, Plaintiffs, and Class members are "person[s]" under the Nebraska CPA. *Id.* § 59-1601(1).

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

386.   Each Defeat Device Vehicle is an "asset[]" within the meaning of the Nebraska CPA. *Id.* § 59-1601(3).

387.   The sale or lease of the Defeat Device Vehicles to the Nebraska members of the class constitute the conduct of "trade" or "commerce" within the meaning of the Nebraska CPA. *Id.* § 59-1601(2).

388.   Volkswagen intentionally, knowingly, unethically, and unscrupulously misrepresented and omitted material facts regarding the Defeat Device Vehicles with an intent to mislead Plaintiffs and Class members.

389.   In connection with the sale and lease of Defeat Device Vehicles, Volkswagen represented that the Defeat Device Vehicles were "clean," low-emission vehicles when, in fact, Volkswagen knew or should reasonably have known they were not; represented that the Defeat Device Vehicles were of a particular quality or standard when, in fact, Volkswagen knew or should reasonably have known they were not; Volkswagen had no intent to sell the Defeat Device Vehicles as advertised; and willfully failed to disclose and actively concealed the existence and true nature of the "defeat device."

390.   Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system, but it concealed that from consumers until regulators forced Volkswagen to disclose it.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

391.   Volkswagen possessed exclusive knowledge it was selling and distributing vehicles throughout the United States that did not comply with EPA regulations, intentionally concealed that information from Plaintiffs and Class members, and made incomplete and misleading representations about the Defeat Device Vehicles, including the true nature of the CleanDiesel engine, while intentionally withholding material facts from Plaintiffs that contradicted these representations.

392.   Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Class member, about the true nature of the Defeat Device Vehicles. Plaintiffs and Class members reasonably relied on Volkswagen's false or misleading representations and omissions in deciding to purchase or lease the Defeat Device Vehicles.

393.   Plaintiffs and the Class members relied on these false or misleading representations and omissions to their detriment. As a direct and proximate result of Volkswagen's deceptive acts and practices, Plaintiffs and the Class members have suffered injury-in-fact and/or actual damage, including the diminished value of their property.

394.   Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public, as the Defeat Device Vehicles emit excessive levels of

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

NOx that pose a serious risk to human health. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

395.    Pursuant to Neb. Rev. Stat. § 59-1609, Plaintiffs and the Class members seek monetary relief against Defendant for actual damages in an amount to be determined at trial. Because Defendant engaged in a willful deceptive act, Plaintiffs request that the court award additional damages of up to $1,000 for each Plaintiff and each Class member.

396.    Plaintiffs also seek an order enjoining Volkswagen's unfair and/or deceptive acts or practices and attorneys' fees, costs, and any other just and proper relief available under the Nebraska CPA.

## COUNT XV:
## VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES ACT
### (Tex. Bus. & Com. Code §§ 17.41, *et seq.*)

397.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

398.    Plaintiffs bring this Count on behalf of the Texas members of the Class.

399.    The Texas Deceptive Trade Practices Act ("DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Tex. Bus. & Com. Code § 17.46.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

400.   Plaintiffs are "consumers" as the DTPA defines that term. *See id.* § 17.45(4).

401.   Defendants are "persons" as the DTPA defines that term. *See id.* § 17.45(3).

402.   Defendants used or employed a false, misleading, or deceptive act by, inter alia, representing that its Defeat Device Vehicles have certain characteristics or benefits, such as low emissions, that they do not have. Plaintiffs relied on those representations to their detriment.

403.   Defendants also violated the DTPA by, as explained in this Complaint, breaching express and implied warranties, and engaging in an unconscionable campaign to deceive regulators and the public.

404.   Plaintiffs acknowledge that the DTPA requires that, prior to making a claim for damages under that statue, a plaintiff make a demand in satisfaction. Tex. Bus. & Com. Code § 17.505(a). Plaintiffs intend to make such a demand and may subsequently amend this Complaint to perfect this Count.

### COUNT XVI:
### VIOLATION OF THE FLORIDA DECEPTIVE & UNFAIR TRADE PRACTICES ACT
### (Fla. Stat. §§ 501.201, *et seq.*)

405.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

406.   Plaintiffs bring this Count on behalf of the Florida members of the Class.

407.   The Florida Deceptive and Unfair Trade Practices Act ("DUTPA" or "Act") regulates and prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

408.   Plaintiffs and Class members are "consumers" under the Act. Fla. Stat. § 501.203(7)

409.   Volkswagen, in designing, marketing, and selling unlawful Defeat Device Vehicles, engaged in deceptive and unfair practices. That includes representing that Defeat Device Vehicles have characteristics, uses, benefits, and qualities which they do not have, such as low emissions.

410.   Defendants' unlawful and deceptive practices were designed to mislead a reasonable customer and to induce customers into buying or leasing Defeat Device Vehicles, and in fact Defendants' practices caused Plaintiffs and Class members to do so.

411.   Those unlawful and deceptive acts caused damages to Plaintiffs and the Class, by, among other things, causing them to pay a premium for purportedly "clean" diesels and causing them to come into possession of a vehicle (or vehicles) that now has a diminished resale value.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

412.   Defendants' deception was willful: Defendants intentionally designed the defeat device and then actively concealed it from regulators.

## COUNT XVII:
## VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT
### (RCW §§ 719.86, *et seq.*)

413.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

414.   Plaintiffs assert this Count on behalf of the Washington State members of the Class.

415.   This claim arises under the Washington Consumer Protection Act, RCW §§ 19.86, et seq. ("CPA").

416.   At all relevant times, Volkswagen engaged in "trade" and/or "commerce" within the meaning of RCW § 19.86.010.

417.   The CPA broadly prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or business. RCW § 19.86.0120.

418.   Volkswagen made uniform representations that its diesel vehicles were of a particular standard, quality, or grade when they were and are not, and that they would perform as represented when they did not, and, as set forth above, made false and/or misleading statements regarding the capacity and characteristics of Defeat Device vehicles that, as set forth above, were unfair or deceptive, had

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

and continue to have the capacity to deceive the public, cause injury to Washington Plaintiffs and were made in violation of the CPA.

419.   In their communications with and disclosures to Washington members of the Class, Volkswagen intentionally concealed and/or failed to disclose that the Defeat Device Vehicles included a software program designed to cheat emissions testing, and that the true emissions of those vehicles were far higher than claimed. Those omissions were unfair or deceptive, had and continue to have the capacity to deceive the public, cause injury to Washingtonians, and were made in clear violation of the CPA.

420.   Volkswagen had exclusive knowledge that the Defeat Device Vehicles had and have the defects set forth above, facts unknown to Plaintiffs and Washington members of the Class. Volkswagen's exclusive knowledge of these material facts gave rise to a duty to disclose such facts, which it failed to perform.

421.   The representations made by Volkswagen and the facts concealed and/or not disclosed by Volkswagen are material facts that were likely to deceive reasonable consumers, and that a reasonable consumer would have relied on in deciding whether or not to purchase a Defeat Device Vehicle manufactured by Volkswagen.

422.   The representations made by Volkswagen and the facts concealed and/or not disclosed by Volkswagen detrimentally affected the public interest.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

There is an inherent public interest in reducing emissions from vehicles, and properly advertising emission levels. The Defeat Device Vehicles did not operate as advertised and thus negatively affected the public interest.

423.   Washington members of the Class justifiably acted or relied to their detriment on Volkswagen's affirmative representations and the concealed and/or non-disclosed facts as evidenced by their purchase and/or use of the defective Defeat Device Vehicles.

424.   Had Volkswagen disclosed all material information regarding the defeat devices, Washington members of the Class would not have purchased and used the Defeat Device Vehicles.

425.   Volkswagen knew, or was reckless in not knowing, that its statements about its "CleanDiesel" vehicles were false and/or misleading.

426.   By the conduct described herein, Volkswagen engaged in unfair methods of competition and/or unfair or deceptive act or practices in the conduct of business, trade, or commerce.

427.   As a direct and proximate result of Volkswagen's violations of the forgoing law, the Washington members of the Class have been injured.

428.   The Washington members of the Class have been damaged and are entitled to all of the damages, remedies, fees, and costs available under the CPA.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

429.   The Washington Plaintiff will provide or already has provided any required notice to appropriate entities regarding Volkswagen's unfair and deceptive trade practices.

## X.   REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Class, respectfully request that the Court enter judgment in their favor and against Volkswagen, as follows:

A.   Certification of the proposed Class, including appointment of Plaintiffs' counsel as Class Counsel;

B.   An order temporarily and permanently enjoining Volkswagen from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.   Injunctive relief in the form of a recall or free replacement;

D.   Public injunctive relief necessary to protect public health and welfare, and to remediate the environmental harm caused by the Defeat Device Vehicles' unlawful emissions;

E.   Costs, restitution, damages, and disgorgement in an amount to be determined at trial;

F.   Revocation of acceptance;

G.   Damages under the Magnuson-Moss Warranty Act;

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

H.      For treble and/or punitive damages as permitted by applicable laws;

I.      An order requiring Volkswagen to pay both pre- and post-judgment interest on any amounts awarded;

J.      An award of costs and attorneys' fees; and

K.      Such other or further relief as may be appropriate.

## XI.    DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial.

RESPECTFULLY SUBMITTED this 13th day of November, 2015.

**KELLER ROHRBACK L.L.P.**

*/s/ Tana Lin*

Lynn Lincoln Sarko
Derek W. Loeser
Amy Williams-Derry
Tana Lin, Bar No. P63125
Gretchen Freeman Cappio
Daniel Mensher
Ryan McDevitt
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel: (206) 623-1900
Fax: (206) 623-3384
lsarko@kellerrohrback.com
dloeser@kellerrohrback.com
awilliams-derry@kellerrohrback.com
tlin@kellerrohrback.com
gcappio@kellerrohrback.com
dmensher@kellerrohrback.com
rmcdevitt@kellerrohrback.com

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Matthew Preusch
KELLER ROHRBACK L.L.P.
1129 State Street, Suite 8
Santa Barbara, CA 93101
Tel: (805) 456-1496
Fax: (805) 456-1497
mpreusch@kellerrohrback.com

*Attorneys for Plaintiffs and the Class*